PATTI GOLDMAN (DCB# 398565)
KRISTEN L. BOYLES (WSB #23806)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
pgoldman@earthjustice.org
kboyles@earthjustice.org

*Attorneys for Defendant-Intervenors*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, CARPENTERS INDUSTRIAL COUNCIL, and DOUGLAS COUNTY, OREGON,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL M. ASHE, Director, U.S. Fish and Wildlife Service, and KEN SALAZAR, Secretary of Interior,<br><br>Defendants,<br><br>and<br><br>AUDUBON SOCIETY OF PORTLAND, SEATTLE AUDUBON SOCIETY, CENTER FOR BIOLOGICAL DIVERSITY, OREGON WILD, CONSERVATION NORTHWEST, ENVIRONMENTAL PROTECTION INFORMATION CENTER, and SIERRA CLUB,<br><br>Defendant-Intervenors. | Case No.  12-111-JDB<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT-INTERVENORS' OPPOSITION
TO PROPOSED CONSENT DECREE**

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .....................................................................................................................3

    I.    THE COURT LACKS JURISDICTION TO ENTER THE PROPOSED
        CONSENT DECREE................................................................................................3

        A.    The 1996 Critical Habitat Rule Falls Outside the Six-Year Statute
             of Limitations................................................................................................3

        B.    The Six-Year Statute of Limitations Is Jurisdictional.................................3

        C.    FWS Has Not Reopened the 1996 Critical Habitat Rule............................4

             1.    The 2008 abandoned rulemaking did not reopen the 1996
                      rule. ...................................................................................................5

             2.    The 2011 revision to critical habitat did not reopen the
                      entirety of the 1996 rule...................................................................8

    II.    THE COURT SHOULD NOT APPROVE A CONSENT DECREE THAT
        WOULD VACATE CRITICAL HABITAT. ........................................................10

    III.    THE CONSENT DECREE IS NOT FAIR, REASONABLE, OR IN THE
        PUBLIC INTEREST. .........................................................................................14

         A.    Removing All Critical Habitat Protections From the Marbled
             Murrelet for at Least Six Years Is Not Fair, Reasonable, or in the
             Public Interest. ..........................................................................................15

         B.    Equity Demands That the 1996 Critical Habitat Designation
             Remain in Place to Prevent Serious Environmental Harm. .......................16

             1.    Seriousness of the deficiency..........................................................17

             2.    Disruptive consequences of vacatur...............................................20

         C.    FWS's Justifications for Vacating Critical Habitat Do Not
             Withstand Scrutiny....................................................................................24

              1.    The Northwest Forest Plan is not a substitute for critical
                      habitat...............................................................................................24

              2.    Critical habitat plays an important role on non-federal
                      lands. ...............................................................................................26

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - i -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

D.      AFRC Will Not Be Prejudiced by Leaving a 16-Year-Old Rule in
        Place during Remand. ...............................................................................28

E.      The Length of the Requested Remand Is Contrary to the Public
        Interest.......................................................................................................28

CONCLUSION.................................................................................................................29

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.L. Pharma, Inc. v. Shalala,*
   62 F.3d 1484 (D.C. Cir. 1995) ............................................................16

\* *Adams v. Bell,*
   711 F.2d 161 (D.C. Cir. 1983) ...........................................................14

\* *Allied Signal v. U.S. Nuclear Reg. Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ................................................17, 18, 28

*Alsea Valley Alliance v. Evans,*
   161 F. Supp. 2d 1154 (D. Or. 2001) .....................................................3

\* *Am. Road & Transp. Builders Ass'n v. EPA (American Road),*
   588 F.3d 1109 (D.C. Cir. 2009) .................................................6, 9, 10

*Ass'n of Cal. Water Agencies v. Evans,*
   No. 00-6148 (E.D. Cal. Aug. 21, 2001) ..............................................16

*Best Bearings Co. v. United States,*
   463 F.2d 1177 (7th Cir. 1972) .............................................................3

\* *Bldg. Indus. Legal Def. Found. v. Norton (Building Industry),*
   231 F. Supp. 2d 100 (D.D.C. 2002) ............................................ *passim*

*Cape Hatteras Access Pres. Alliance v. U.S. Dept. of Interior,*
   344 F. Supp. 2d 108 (D.D.C. 2004) ....................................................23

\* *Carpenters Indus. Council v. Salazar,*
   734 F. Supp. 2d 126 (D.D.C. 2010) ...............................................13, 15

*Center for Biological Diversity v. Norton,*
   240 F. Supp. 2d 1090 (D. Ariz. 2003) .................................................25

\* *Citizens for a Better Environment v. Gorsuch,*
   718 F.2d 1117 (D.C. Cir. 1983) ..........................................................14

*Conservation Force v. Salazar,*
   811 F. Supp. 2d 18 (D.D.C. 2011) .......................................................3

\* *Consumer Energy Council v. Federal Energy Regulatory Comm'n,*
   673 F.2d 425 (D.C. Cir. 1982) ...........................................................11

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - iii -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

*Ctr. for Native Ecosystems v. Salazar*,
  795 F. Supp. 2d 1236 (D. Colo. 2011)..........................................................20, 28

*Defenders of Wildlife v. Norton*,
  239 F. Supp. 2d 9 (D.D.C. 2002) .........................................................................23

*Douglas Timber Operators v. Salazar*,
  774 F. Supp. 2d 245 (D.D.C. 2011) .....................................................................14

\* *Endangered Species Comm. of the Bldg. Indus. Ass'n of S. Cal. v. Babbitt*,
  852 F. Supp. 32 (D.D.C. 1994)........................................................................18, 20

*Environmental Defense Fund v. Costle*,
  636 F.2d 1229 (D.C. Cir. 1980) ...........................................................................11

*F.C.C. v. Fox Television Stations*,
  556 U.S. 502 (2009)..............................................................................................26

*Fertilizer Inst. v. EPA*,
  935 F.2d 1303 (D.C. Cir. 1991) .......................................................................15, 17

\* *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*,
  378 F.3d 1059 (9th Cir. 2004) .....................................................................22, 23, 25

*Home Builders Ass'ns of N. California v. Norton*,
  293 F. Supp. 2d 1 (D.D.C. 2002) ....................................................................12, 13

*Humane Soc'y of U.S. v. Kempthorne*,
  579 F. Supp. 2d 7 (D.D.C. 2008) .........................................................................20

*ICORE, Inc. v. Federal Communications Comm'n*,
  985 F.2d 1075 (D.C. Cir. 1993) ...........................................................................15

\* *Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ...............................................................15, 17, 18, 20

\* *Int'l Union, United Mine Workers v. Federal Mine Safety & Health Admin.*,
  920 F.2d 960 (D.C. Cir. 1990) .........................................................................16, 18

*John R. Sand & Gravel Co. v. United States*,
  552 U.S. 130 (2008)................................................................................................3

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994)................................................................................................4

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*,
  478 U.S. 501 (1986)..........................................................................................4, 12

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - iv -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

*Middle Rio Grande Conservancy District v. Babbitt,*
  206 F. Supp. 2d 1156 (D.N.M. 2000) ...................................................................25

\* *Montana v. Clark,*
  749 F.2d 740 (D.C. Cir. 1984) ........................................................................6, 7

*N.M. Cattle Growers Ass'n v. U.S. Fish and Wildlife Serv.,*
  248 F.3d 1277 (10th Cir. 2001) ...................................................................12, 23

*Nat'l Ass'n of Home Builders v. Evans,*
  2002 WL 1205743 (D.D.C. Apr. 30, 2002) ............................................................12

*Nat'l Ass'n of Home Builders v. Norton (NAHB II),*
  2004 WL 3740765 (D. Ariz. June 28, 2004) .......................................................18, 20

\* *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd. (NARPO),*
  158 F.3d 135 (D.C. Cir. 1998) ..............................................................4, 7, 9, 10

*Nat'l Mining Ass'n v. Office of Hearings and Appeals,*
  777 F. Supp. 2d 164 (D.D.C. 2011) ........................................................................8

\* *Nat'l Parks Conservation Ass'n v. Salazar,*
  660 F. Supp. 2d 3 (D.D.C. 2009) ...................................................................13, 15

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
  839 F. Supp. 2d 1117 (D. Or. 2011) ...............................................................20, 21

*National Mining Ass'n v. U.S. Dep't of Interior,*
  70 F.3d 1345 (D.C. Cir. 1995) ............................................................................6

\* *Natural Res. Def. Council v. EPA,*
  489 F.3d 1250 (D.C. Cir. 2007) .........................................................................15

*Natural Res. Def. Council v. Train,*
  510 F.2d 692 (D.C. Cir. 1974) ..........................................................................29

*Natural Res. Def. Council v. U.S. Dept. of the Interior (NRDC),*
  275 F. Supp. 2d 1136 (C.D. Cal. 2002) ......................................................... passim

\* *P & V Enters. v. U.S. Army Corps of Eng'rs,*
  516 F.3d 1021 (D.C. Cir. 2008) ...................................................................3, 6, 8, 9

\* *Public Citizen v. Nuclear Regulatory Comm'n,*
  901 F.2d 147 (D.C. Cir. 1990) ......................................................................6, 7, 9

*Sierra Club v. Slater,*
  120 F.3d 623 (6th Cir. 1997) .........................................................................3, 23

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

*Sierra Club v. U.S. Fish & Wildlife Serv.,*
  245 F.3d 434 (5th Cir. 2001) ...........................................................................23

*W. Va. Highlands Conservancy v. Johnson,*
  540 F. Supp. 2d 125 (D.D.C. 2008) ....................................................................3

\* *Western Oil & Gas v. EPA,*
  633 F.2d 803 (9th Cir. 1980) ......................................................................16, 17

**STATUTES**

5 U.S.C. § 551(5) ..........................................................................................11

5 U.S.C. § 553 .............................................................................................10

16 U.S.C. § 1531 ..........................................................................................24

16 U.S.C. § 1533 .....................................................................................10, 11

16 U.S.C. § 1536 ..........................................................................................21

28 U.S.C. § 2401(a) ...................................................................................3, 10

**OTHER AUTHORITIES**

56 Fed. Reg. 28,362 (June 20, 1991) ....................................................................2

57 Fed. Reg. 45,328 (Oct. 1, 1992) ......................................................................2

61 Fed. Reg. 26,255 (May 24, 1996) ............................................................ *passim*

71 Fed. Reg. 53,838 (Sept. 12, 2006) ...................................................................5

73 Fed. Reg. 12,067 (Feb. 27, 2008) ..............................................................5, 7, 8

73 Fed. Reg. 44,678 (July 31, 2008) .....................................................................5

76 Fed. Reg. 61,599 (Oct. 5, 2011) ...............................................................5, 9, 10

77 Fed. Reg. 14,414 (Mar. 9, 2012) ....................................................................26

Wash. Admin. Code § 222-16-050(1) ..................................................................27

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - vi -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## INTRODUCTION

Plaintiffs American Forest Resource Council ("AFRC") and federal defendants U.S. Fish and Wildlife Service ("FWS") present this Court with a consent decree for approval, one that resolves AFRC's claims challenging the 1996 critical habitat designation for the marbled murrelet by granting them.  Buried in the joint motion memorandum and consent decree are the salient specifics.  FWS has agreed to <u>vacate</u> the 16-year-old critical habitat rule, and it has agreed to a schedule for remand which delays a new critical habitat rule until September 30, <u>2018</u>—ensuring that murrelet habitat remains unprotected for at least six years.

The Court should reject this consent decree for three reasons.  First, in this challenge to a 1996 final rule designating critical habitat, the statute of limitations has long since expired, and this Court does not have jurisdiction to approve this consent decree.  Second, this Court should not allow AFRC and FWS to accomplish through the label of "consent decree" what they could not accomplish through a request for voluntary remand or similar motion.  Federal agencies cannot simply agree to vacate validly adopted rules and obtain federal court approval for that decision.  Finally, the proposed consent decree is not fair, reasonable, or in the public interest. The parties state that the Court can approve this consent decree over the objections of defendant-intervenors, but they slide over the fact that this agreement will leave the marbled murrelet—a threatened seabird in decline primarily because of habitat destruction—without Endangered Species Act habitat protections for at least six years.  They also rely on a separate federal agency's land management plan to protect murrelet habitat in the intervening years, a position that the Ninth Circuit has resoundingly rejected.

For the reasons discussed below, defendant-intervenors Audubon Society of Portland *et al.* ("Audubon") respectfully ask the Court to deny the motion for entry of consent decree.

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 1 -

BACKGROUND

In the Pacific Northwest, a small seabird known as the marbled murrelet makes its home. About the size of a robin, marbled murrelets spend most of their relatively long lives on the coastal sea, diving for and feeding on small fish and invertebrates.  These unassuming birds would hardly seem to be the focus of controversy, except that murrelets nest almost exclusively in coastal old-growth trees.  This nesting behavior puts this shy seabird squarely in the path of the timber industry, and when FWS first studied murrelets, commercial timber harvest had already destroyed up to 90 percent of marbled murrelet nesting habitat in Washington, Oregon, and California.  56 Fed. Reg. 28,362, 28,363-64 (June 20, 1991).

In 1992, due primarily to this extensive harvest of late-successional and old-growth forest, FWS listed the population of marbled murrelets in Washington, Oregon, and California (the "tri-state population") as threatened under the Endangered Species Act ("ESA").  57 Fed. Reg. 45,328 (Oct. 1, 1992).  In 1996, FWS designated 3,887,800 acres of land as critical habitat for the murrelet.  61 Fed. Reg. 26,255 (May 24, 1996).  Through its critical habitat designation, FWS decided that the identified areas were necessary for the survival and recovery of the tri-state population.

The tri-state murrelet listing and critical habitat designation has long irritated plaintiff AFRC, a timber and forest products trade association, because it has restricted some logging primarily on federal public land.  Over the last decade, AFRC has engaged in a litigation campaign to remove all protections from the murrelet and its old-growth habitat—despite recent scientific studies showing the continued decline of murrelets in both the tri-state region and north in Canada and Alaska.  This campaign has led to this case, which challenges FWS's failure to grant AFRC's petition for delisting and challenges FWS's 1996 critical habitat designation. While FWS states that it will continue to defend its denial of AFRC's delisting petition, FWS has

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 2 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

submitted a consent decree for this Court's approval that eliminates all critical habitat protection

for marbled murrelets for at least the next six years.

ARGUMENT

I.   THE COURT LACKS JURISDICTION TO ENTER THE PROPOSED CONSENT
     DECREE.

     A.   <u>The 1996 Critical Habitat Rule Falls Outside the Six-Year Statute of Limitations.</u>

Federal law provides that "every civil action commenced against the United States shall

be barred unless the complaint is filed within six years after the right of action first accrues."

28 U.S.C. § 2401(a).  Because § 2401(a)'s six-year limitation applies to actions under the ESA,

*see, e.g., Alsea Valley Alliance v. Evans,* 161 F. Supp. 2d 1154, 1160 (D. Or. 2001), and because

in the case of a critical habitat designation, a cause of action accrues when the agency's decision

becomes "final," *see Sierra Club v. Slater,* 120 F.3d 623, 631 (6th Cir. 1997), there is no

question that AFRC's 2012 challenge to FWS's 1996 final murrelet critical habitat designation is

out of time.

     B.   <u>The Six-Year Statute of Limitations Is Jurisdictional.</u>

Although statutes of limitations do not always affect a court's subject matter jurisdiction,

courts in this Circuit have consistently held that § 2401(a) is jurisdictional, and that it may

impose a subject matter bar to civil suits against the federal government.  *See P & V Enters. v.*

*U.S. Army Corps of Eng'rs,* 516 F.3d 1021, 1026-27 (D.C. Cir. 2008); *Conservation Force v.*

*Salazar,* 811 F. Supp. 2d 18, 28 n.4 (D.D.C. 2011); *W. Va. Highlands Conservancy v. Johnson,*

540 F. Supp. 2d 125, 143 (D.D.C. 2008).  Because § 2401(a) is jurisdictional, it is "not capable

of a waiver or subject to an estoppel" by the government.  *Best Bearings Co. v. United States,*

463 F.2d 1177, 1179 (7th Cir. 1972).  *See John R. Sand & Gravel Co. v. United States,* 552 U.S.

130 (2008) (holding that 28 U.S.C. § 2501, a near-identical statute to § 2401(a) dealing with suits

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

in the Court of Federal Claims, is jurisdictional and not subject to waiver).

Federal courts are courts of limited jurisdiction and possess only the powers conferred by the United States Constitution or statute.  *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).  Given that this Court does not have subject matter jurisdiction to decide whether the murrelet's 1996 critical habitat designation was valid, the Court also lacks the authority to approve a consent decree that entirely eliminates that critical habitat.  *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland,* 478 U.S. 501, 525 (1986) (for a court to have authority to approve a consent decree, it "must spring from and serve to resolve a dispute *within the court's subject-matter jurisdiction.*") (emphasis added).  This Court may not enter or approve the proposed consent decree because it does not have subject matter jurisdiction over claims against a critical habitat rule finalized 16 years ago.

C.    FWS Has Not Reopened the 1996 Critical Habitat Rule.

In their joint motion, AFRC and FWS do not mention this jurisdictional barrier, acting as if there is federal district court jurisdiction where there is none.  Although not addressed in their papers, AFRC and FWS likely rely on the doctrine of reopener to justify invoking this Court's jurisdiction.  The doctrine of reopener provides an exception to statutory time limits on seeking review of agency decisions; in certain circumstances, agencies restart the statute of limitations where the agency actually reconsiders and reaffirms an older rule.  *See, e.g., Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd. (NARPO),* 158 F.3d 135, 141 (D.C. Cir. 1998) ("We have said that when the later proceeding explicitly or implicitly shows that the agency actually reconsidered the rule, the matter has been reopened ….").

In the past 16 years, FWS has twice revisited the marbled murrelet critical habitat designation, both times without reopening the original 1996 rule.  In 2006, FWS issued a proposed new critical habitat rule that, if adopted as proposed, would have eliminated 95 percent

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

of the murrelet's protected critical habitat.  71 Fed. Reg. 53,838 (Sept. 12, 2006).  The agency

accepted public comment on its proposed rule, but then abandoned the new rule entirely,

declining to finalize the 2006 proposal or even respond to comments.  73 Fed. Reg. 12,067

(Feb. 27, 2008).  Because the agency neither promulgated a new rule nor reevaluated and

readopted the old rule, FWS's actions did not reset the statute of limitations on the 1996 rule.

In 2008, FWS again proposed to modify the murrelet critical habitat rule, but this time it

proposed the removal of specific, discrete areas from the 1996 designation.  73 Fed. Reg. 44,678

(July 31, 2008).  FWS finalized this minor revision in 2011, specifically noting that comments

received on the underlying 1996 rule as a whole were "outside the scope of the proposed rule."

76 Fed. Reg. 61,599, 61,600 (Oct. 5, 2011).  While the statute of limitations for any challenge to

the removal of those approximately 200,000 acres from almost four million acres of critical

habitat runs from 2011, this limited revision did not reopen the rest of the 1996 rule.

> 1.      *The 2008 abandoned rulemaking did not reopen the 1996 rule.*

In 2006, FWS began a process to completely rewrite the 1996 murrelet critical habitat

rule.  If FWS had promulgated this new habitat rule, a new statute of limitations would have

started at that time.  But FWS did not finalize its proposed rule.  More importantly, neither did

FWS make a substantive decision to re-adopt the 1996 rule.  Instead, the agency abandoned the

process in mid-stream, citing other factors that made revision at that time imprudent.  FWS

stated that "due to the uncertainty regarding the effects of current BLM Resource Management

Plan revisions, we find that it is not appropriate to revise critical habitat at this time….

Accordingly, the May 24, 1996 final rule designating critical habitat for the marbled murrelet

remains in effect."  *Id.* at 12,068.  This abandonment of a proposed rule—a decision that left the

prior rule in place, unexamined—did not reopen the original rule.

Courts look to the entire context of an agency's new rulemaking to determine whether the

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 5 -

agency reopened a previous rule.  *Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 150 (D.C. Cir. 1990).  Four factors are often discussed during this overarching review: whether the agency "(1) held out [the unchanged section] as a proposed regulation, (2) offered an explanation for its language, (3) solicited comments on its substance, and (4) responded to the comments in promulgating the regulation in its final form."  *Montana v. Clark,* 749 F.2d 740, 744 (D.C. Cir. 1984).  In this way, the doctrine of reopener strikes a note of basic fairness—if an agency has reevaluated an old rule, taken and responded to comments on it, and affirmatively decided to re-adopt it, then the agency cannot shield what is truly a new decision from review.

Proposed changes to an existing rule alone do not trigger reopener—a new promulgation and re-adoption of the old rule must be made by the agency.  For example, when an agency published and solicited comments on an advanced notice of proposed rulemaking, but then decided not to amend the rule at issue, the D.C. Circuit found no reopener.  *See P & V Enters.,* 516 F.3d at 1024.  Similarly, when an agency published a petition for a rule change and solicited comments on that petition but then did not amend the rule at issue, there was no reopener.  *National Mining Ass'n v. U.S. Dep't of Interior,* 70 F.3d 1345, 1351 (D.C. Cir. 1995).  Nor is reiterating the original rationale for the old rule sufficient to constitute reopener.  *Am. Road & Transp. Builders Ass'n v. EPA (American Road),* 588 F.3d 1109 (D.C. Cir. 2009).  In *American Road,* EPA had republished an existing rule and repeated its rationale for the rule "more or less verbatim" from its initial promulgation.  *Id.* at 1115.  The court held that there was no indication that EPA reconsidered the rule, so its republication did not constitute reopener.

In contrast, where an agency publishes a proposed rule that includes provisions from a previously enacted rule, solicits comments on the proposed new rule, including the previously promulgated provisions, and then publishes a final rule that re-adopts the prior rule and includes

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

a response to comments explaining the agency's decision to continue to adhere to the old rule, the agency has reopened the entire rule, including its original aspects. *See, e.g., Montana,* 749 F.2d at 744 (reopener because the agency "held out [the old rule] as a proposed regulation, offered an explanation for its language, solicited comments on its substance, and responded to the comments in promulgating the regulation in its final form"); *Ohio,* 838 F.2d at 1327-28 (reopener because agency "explained the unchanged but republished portion of the regulation … in general policy terms and responded to at least one comment" directed at the old rule).

This is precisely what did <u>not</u> happen here.  In 2006, FWS did <u>not</u> hold out the 1996 rule as a proposed regulation, it offered a substantially different rule, one that reduced protected critical habitat by almost 95 percent.  FWS did <u>not</u> solicit comments on the old rule; it took comments on the new proposed rule.  In 2008, FWS did <u>not</u> respond to comments at all; instead, it simply stopped the administrative process. 73 Fed. Reg. at 12,068.  FWS did <u>not</u> promulgate a new rule or re-promulgate the prior rule; it only noted that the old rule remained in effect, a simple statement of fact, not a decision.

Looking at the entire context, *Public Citizen,* 901 F.2d at 150, it is clear that FWS did not re-adopt the 1996 rule in 2008.  The reopener doctrine allows an otherwise late challenge to proceed because the agency "reexamined … and reaffirmed its [prior] decision." *Public Citizen,* 901 F.2d at 151; *NARPO,* 158 F.3d at 141 (for reopener to apply, agency must have "actually reconsidered the rule").  Here, FWS did not reconsider or reaffirm the 1996 rule; it simply abandoned a separate rulemaking process.  FWS did not even respond to comments, contrary to other situations where courts in this circuit have found reopener. *See Public Citizen*, 901 F.2d at 150 ("If in responding to comments the agency uses language that shows that it did in fact reconsider an issue, a renewed challenge to the underlying rule or policy will be allowed.").

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

The 2008 abandonment of the rule revision process did not reexamine the 1996 rule, "much less offer[] any rationale for reaffirming the rule." *P & V Enters.,* 516 F.3d at 1025. The 2008 finding, much like the press release in *P & V Enters.*, was not a reexamination of the 1996 rule, did not respond to comments, and briefly explained that FWS found "that it is not appropriate to revise critical habitat at this time." 73 Fed. Reg. at 12,068. In all the cases where courts have found reopener, the courts have also found that the agency substantively decided to reaffirm the old rule. *See, e.g., Nat'l Mining Ass'n v. Office of Hearings and Appeals,* 777 F. Supp. 2d 164, 174 (D.D.C. 2011) ("[t]he fact that OHA altered, at least to some extent, the basis underpinning [its regulation] … [is] further proof that it undertook the kind of serious, substantive reconsideration that justifies application of the reopener doctrine"). Those facts do not exist here. Because the reopener doctrine only applies where the entire context "demonstrates that the agency 'has undertaken a serious, substantive reconsideration of the [existing] rule,'" FWS did not reopen the 1996 critical habitat rule in 2008. *P & V Enters.,* 516 F.3d at 1024 (quoting *Nat'l Mining Ass'n,* 70 F.3d at 1352).

> 2. *The 2011 revision to critical habitat did not reopen the entirety of the 1996 rule.*

The question of application of the reopener doctrine to FWS's 2011 revision to critical habitat is even simpler. In 2011, FWS proposed and ultimately adopted a specific, narrow revision of the 1996 rule to remove limited amounts of critical habitat that the agency felt no longer met the critical habitat definition. The statute of limitations for that minor revision started to run in 2011, but it did not throw open the entire 1996 critical habitat designation to renewed review.

Just as reopener can only be triggered by a new promulgation by the agency (a essential fact missing from the 2008 finding discussed above), reopener only applies to those particular

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 8 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

issues actually reconsidered in the new promulgation.  In 2011, FWS made a final decision that revised murrelet critical habitat by removing approximately 200,000 acres from the 1996 designation.  76 Fed. Reg. 61,599.  AFRC and others remain free to challenge that specific revision until October 5, 2017, but they cannot boot strap a challenge to the rest of the 1996 rule into that timeframe.

As discussed above, the doctrine of reopener only applies where the agency actually reconsidered and reaffirmed a previous rule.  *NARPO,* 158 F.3d at 141; *Public Citizen,* 901 F.2d at 150-51; *American Road,* 588 F.3d at 1115; *P & V Enters.,* 516 F.3d at 1024.  In *NARPO*, the D.C. Circuit rejected the contention that three specific proposals opened up a wholesale review of the underlying regulatory scheme.  158 F.3d at 144.  The appellate court found that by making specific proposals, the agency "did not in any way signal its intent to revisit" other portions of the rule.  *Id.*  Similarly here, FWS explicitly rejected comments and suggestions that focused on the underlying 1996 rule:

> Several comments we received were outside the scope of the proposed rule, which was limited to (1) The proposed removal of approximately 191,000 ac (77,295 ha) of critical habitat in northern California and southern Oregon based on the very low likelihood of marbled murrelet occurrence as is discussed in further detail below; (2) the proposed removal of approximately 63,000 ac (25,495 ha) of critical habitat in Douglas and Lane Counties, Oregon, that were designated farther than 35 miles inland, based on criteria identified in the 1997 Recovery Plan for the Marbled Murrelet (Washington, Oregon, and California Populations); and (3) the proposed taxonomic revision of the scientific name of the marbled murrelet.

76 Fed. Reg. at 61,600.  FWS specifically listed examples of comments that went outside the scope of the rule, including "claims of inconsistency with statutory requirements" that echo AFRC's claims in this litigation.  *Id.*  FWS noted that these issues were not only beyond the scope of the proposed rule, but might also "require separate rulemaking to be considered."  *Id.* FWS applied the 1996 critical habitat criteria to recent data from designated critical habitat to

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 9 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

determine whether the habitat continued to meet the 1996 criteria, *id.* at 61,606, and ultimately

amended, but did not reconsider, the 1996 rule. *Id.* at 61,612. As the court in *NARPO* found,

even if an agency includes general language in its notice of proposed rulemaking that may invite

broader comments, it is what the agency ultimately proposes, reviews, and promulgates that

controls. 158 F.3d at 145 ("Inserting what amounts to a suggestion box in the Federal Register

hardly eviscerates jurisdictional time constraints."); *id.* at 146 ("The mere act of repeating old

reasons for an old policy is not the equivalent of reconsidering, and therefore reopening, the old

issue."). *See also American Road,* 588 F.3d at 441 (agency gave no indication that it had

undertaken a serious, substantive reconsideration of the entire rule).

*      *      *

In sum, this Court lacks jurisdiction under § 2401(a) to entertain AFRC's challenges to

the 16-year old critical habitat designation for the marbled murrelet. Accordingly, the Court

lacks jurisdiction to enter the proposed consent decree.

## II.     THE COURT SHOULD NOT APPROVE A CONSENT DECREE THAT WOULD VACATE CRITICAL HABITAT.

The parties claim that the consent decree embodies a "reasonable compromise" because

AFRC does not receive declaratory relief, and FWS does not admit to any legal violations in its

1996 critical habitat rule. Joint Memo. at 7. Yet the parties, under the cover of a consent decree,

are trying to do what other courts in this Circuit have recently disallowed—vacate a federal rule

without following Administrative Procedure Act ("APA") requirements and obtain a federal

court blessing without a ruling on the merits.

The critical habitat rule that FWS has agreed to vacate through the proposed consent

decree is a final regulation adopted through the notice and comment procedures of § 4 of the

APA, 5 U.S.C. § 553, and § 4 of the ESA, 16 U.S.C. § 1533(a). These procedures include

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 10 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

adequate public notice and an opportunity to comment, as well as a number of other specific steps.  *See, e.g.,* 16 U.S.C. § 1533(4)-(6) (setting forth procedural requirements for critical habitat designations and revisions)  As a consequence, FWS's agreement to vacate murrelet critical habitat as a part of the consent decree is itself a rulemaking, subject to these same procedural requirements.  *See* 5 U.S.C. § 551(5) (APA defines "rule making" to encompass "repealing a rule").  FWS cannot unilaterally rescind a final critical habitat rule under either the APA or the ESA by dressing its action in the trappings of an agreed settlement among presumably adverse parties, and the Court should reject the consent decree for that reason.

Even where a consent decree admits a legal defect in the final rule that is being set aside through a proposed settlement—an admission FWS explicitly does not make here—this Circuit has observed:

> [the] argument that notice and comment requirements do not apply to 'defectively promulgated regulations' is untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect and asserting that modification or repeal without notice and comment was necessary to correct the situation.  Such a holding would ignore the fact that the question whether the regulations are indeed defective is one worthy of notice and an opportunity to comment.

*Consumer Energy Council v. Federal Energy Regulatory Comm'n,* 673 F.2d 425, 447 n.79 (D.C. Cir. 1982).  To permit an agency to accomplish via agreement what is otherwise prohibited by the procedural decisionmaking requirements of the APA and the ESA would open a gaping loophole in these procedural safeguards and allow circumvention of notice and comment through suits by private interests that conveniently end in consent decrees to rescind duly promulgated regulations.  *Cf. Environmental Defense Fund v. Castle,* 636 F.2d 1229 (D.C. Cir. 1980) (upholding an EPA settlement agreement because agency committed only to preliminary, investigatory steps that did not require notice and comment under the APA).

FWS can only revise or rescind a final critical habitat rule through further rulemaking.

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 11 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

The parties' proposed consent decree instead seeks a shortcut for repeal of a final rule that evades the requirements of both the ESA and the APA.  Indeed, in the absence of any completed rulemaking to repeal or amend the existing murrelet critical habitat designation, the Court cannot properly set aside the existing designation unless it independently determines that the existing final rule establishing the designation is illegal -- a point the FWS has not conceded, and a determination the Court cannot make on the information currently before it.  Under these circumstances, the Court should reject the proposed consent decree as contrary to the requirements of the laws that form the basis of the AFRC's complaint.  *See, e.g.,* Complaint ¶¶ 47-67 (claims and jurisdiction based on the ESA and the APA); *see also Local Number 93*, 478 U.S. at 525-26 (courts cannot approve settlement agreements that "conflict[] with or violate[] the statute upon which the complaint was based").

Audubon is aware that two different district courts in this circuit have approved consent decrees that vacated critical habitat rules.  *See Home Builders Ass'ns of N. California v. Norton*, 293 F. Supp. 2d 1, 4 (D.D.C. 2002); *Nat'l Ass'n of Home Builders v. Evans*, 2002 WL 1205743, at *2 (D.D.C. Apr. 30, 2002).  However, the consent decrees in both cases stemmed from FWS's decision to apply, nationwide, a ruling from the Tenth Circuit concerning the economic analysis associated with designation of critical habitat.  *See N.M. Cattle Growers Ass'n v. U.S. Fish and Wildlife Serv.,* 248 F.3d 1277 (10th Cir. 2001).  In both cases, the district court judges reviewed not only the record of the cases before them, but also the Tenth Circuit's decision, finding the Tenth Circuit opinion and rationale persuasive.  *See Nat'l Ass'n of Home Builders,* 2002 WL 1205743, at *3 ("the persuasive rationale underlying the Tenth Circuit's opinion makes it quite understandable why the agency would want to remove the critical habitat designations and conduct them in accord with proper methodology."); *Home Builders Ass'ns of N. California*,

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 12 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

293 F. Supp. 2d at 3 ("the Court has closely reviewed the parties' arguments regarding the validity of the economic impacts analysis advanced by the Tenth Circuit in *New Mexico Cattle Growers* and adopted thereafter by the Fish and Wildlife Service as its policy in this case and all others throughout the country.").  In that unique situation, the courts approved consent decrees that vacated critical habitat.

With respect, Audubon submits that more recent D.C. district court decisions limit the applicability of the *Home Builders* precedents.  In *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4 (D.D.C. 2009), the district court rejected a motion for voluntary remand and vacatur of a mining rule even though the federal agency "confess[ed] serious legal deficiencies in the rulemaking:"

> The Court finds no precedent to support the proposition that it should remand and vacate the SBZ Rule under the circumstances presented here.  Moreover, the [defendant-intervenor National Mining Association] has the better argument that granting the Federal defendants' motion would wrongfully permit the Federal defendants to bypass established statutory procedures for repealing an agency rule.  The APA requires government agencies to follow certain procedures, including providing for public notice and comment, before enacting or amending a rule. ...  While notice and comment procedure is not required where a court vacates a rule after making a finding on the merits, ... granting vacatur here would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits.

*Id.* at 4 (citations omitted).  The district court in *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010), denied FWS's request to vacate a 2008 critical habitat rule for northern spotted owls during remand (even though vacatur would have returned to force a more protective rule) because it "would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits."  This Court similarly invalidated the Department of Interior's withdrawal of a Bureau of Land Management ("BLM") planning rule because the agency did not

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 13 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

follow the proper procedures, including notice and comment.  *Douglas Timber Operators v. Salazar,* 774 F. Supp. 2d 245, 257-59 (D.D.C. 2011).

Audubon asks the Court to reject the consent decree because it attempts to vacate, without public process or admission of legal error, a validly promulgated agency rule.

III.    THE CONSENT DECREE IS NOT FAIR, REASONABLE, OR IN THE PUBLIC INTEREST.

Even if the Court finds that it has jurisdiction over challenges to the 1996 critical habitat rule (a finding it should not make), or the Court decides it can approve the vacatur of a federal rule without the required statutory process (another finding it should not make), the Court should decline to enter the proposed consent decree because it is not fair, reasonable, or in the public interest.  AFRC and FWS ask the Court to bless the elimination of a final rule that has been in place for nearly two decades, without any public process or admission of legal error.  The consent decree would leave no designated critical habitat in place for at least six years, despite the fact that murrelets continue to decline and despite the fact that there are clear threats to murrelet habitat during the lengthy period of remand.  The Court should reject the proposed consent decree as contrary to law and public policy.  *See Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir. 1983) (prior to approving a consent decree a court must "satisfy itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest'"); *Adams v. Bell,* 711 F.2d 161, 170 n.40 (D.C. Cir. 1983) (en banc) ("[A] court should enter a consent decree affecting the public interest only after considering the substantive validity of the decree").[1]

---

[1] AFRC and FWS cite to the standard for granting motion for voluntary dismissal to argue that Audubon must show "legal prejudice" to object to the consent decree.  *See* Joint Memo. at 12, citing *Kellmer v. Raines,* 674 F.3d 848, 851 (D.C. Cir. 2012).  This is simply the incorrect standard.  A motion for voluntary dismissal without prejudice, where a plaintiff merely abandons

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 14 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

A.   Removing All Critical Habitat Protections From the Marbled Murrelet for at Least Six Years Is Not Fair, Reasonable, or in the Public Interest.

The consent decree is not fair, reasonable, or in the public interest because vacatur of the longstanding critical habitat rule is inappropriate under this Circuit's precedent.  This is especially true where, as here, the critical habitat rule has been in place for 16 years, and many federal, state, and private actions, including recovery efforts, are based upon the current critical habitat designation.

It is well settled that a court need not vacate an administrative rule that has been held invalid and has been remanded to the agency for further proceedings.  *See, e.g., ICORE, Inc. v. Federal Communications Comm'n*, 985 F.2d 1075, 1081 (D.C. Cir. 1993) ("This and other federal circuit courts have repeatedly found it appropriate to remand an agency action without vacating it") (collecting cases).  Indeed, as the Ninth Circuit explained in the context of a successful challenge to an ESA listing determination: "when equity demands, the regulation can be left in place while the agency follows the necessary procedures."  *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1405 (9th Cir. 1995); *Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1312 (D.C. Cir. 1991).  Courts invoking their equitable authority in this Circuit have "traditionally not vacated [a] rule if doing so would have serious adverse implications for public health and the environment."  *Natural Res. Def. Council v. EPA,* 489 F.3d 1250, 1265 (D.C. Cir. 2007) (Rogers, J., concurring in part and dissenting in part).[2]  This case presents such a situation: vacating the 1996 critical habitat rule would have serious adverse effects on the marbled murrelet and its

its claims, does not resemble this situation, where AFRC agrees to dismiss its claims only because FWS agrees to grant its requested relief.

[2] Additionally, courts in this Circuit have been hesitant to vacate a rule when they have not considered the merits of the underlying case.  *See Carpenters Indus. Council,* 734 F. Supp. 2d at 135-36; *Nat'l Parks Conservation Ass'n,* 660 F. Supp. 2d at 4.  Particularly here, where equity weighs heavily against vacatur, the Court should not approve a consent decree that vacates the 1996 rule without considering the merits of plaintiffs' claims.

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

habitat.  Because the consent decree vacates the 16-year-old critical habitat rule and proscribes a

six-year revision period, it is not fair, reasonable, or in the public interest.

A leading D.C. Circuit case directs a court deciding whether to vacate an agency rule or

order to consider "the seriousness of the order's deficiencies (and thus the extent of doubt

whether the agency chose correctly) and the disruptive consequences of an interim change that

may itself be changed."  *Int'l Union, United Mine Workers v. Federal Mine Safety & Health

Admin.,* 920 F.2d 960, 967 (D.C. Cir. 1990); *see A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484,

1491 (D.C. Cir. 1995) (same).  Other circuits have likewise refrained from vacating an agency

rule where such a remedy would cause disruption and undermine the statutory scheme.  *See

Western Oil & Gas v. EPA,* 633 F.2d 803, 813 (9th Cir. 1980).

The substantial resources and efforts that have already been invested in developing

habitat conservation programs, avoiding harm to murrelet habitat, and planning for the recovery

of murrelets will be disrupted by removal of the critical habitat designation that currently exists.

Indeed, as another district court considering a challenge to a salmon critical habitat rule found,

the future prospects for recovery of the species could be diminished by a delay in further

recovery planning that depends on the critical habitat designation.  *See Ass'n of Cal. Water

Agencies v. Evans,* No. 00-6148 REC/DLB**,** Order Denying Applicants' Motion to Intervene as

Defendants at 9-10 (E.D. Cal. Aug. 21, 2001) (recognizing impact of plaintiffs' claims on

applicants' protectable interests because "recovery planning efforts would have to be rolled back

and species recovery would have to be delayed" if the existing critical habitat designations were

set aside) (attached as Exhibit A to Declaration of Kristen L. Boyles (Sept. 14, 2012).

B.    <u>Equity Demands That the 1996 Critical Habitat Designation Remain in Place to
      Prevent Serious Environmental Harm.</u>

Vacating the 1996 rule is nearly certain to result in serious harm to the marbled murrelet

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 16 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

and its habitat, while leaving the rule in place during remand will place minimal burden on

AFRC.  "The decision whether to vacate depends on 'the seriousness of the order's deficiencies

(and thus the extent of doubt whether the agency chose correctly) and the disruptive

consequences of an interim change that may itself be changed.'"  *Allied Signal v. U.S. Nuclear*

*Reg. Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993) (quoting *Int'l Union*, 920 F.2d at 967).  In

balancing these two factors in the environmental context, courts demonstrate special concern for

potential environmental harm during remand.  *See, e.g., Idaho Farm Bureau*, 58 F.3d at 1405

("In the present case, concern exists regarding the potential extinction of an animal species");

*Fertilizer Inst.,* 935 F.2d at 1312 (expressing concern that removal of EPA rules "may affect the

EPA's ability to respond adequately to safety hazards"); *W. Oil & Gas Ass'n v. EPA,* 633 F.2d

803, 813 (9th Cir. 1980) ("Our hesitancy springs from a desire to avoid thwarting in an

unnecessary way the operation of the Clean Air Act").  These concerns support leaving the

critical habitat rule in place during remand.

### 1.    *Seriousness of the deficiency*

The first *Allied Signal* factor, the "deficiency" factor, does not tip the balance towards

vacatur in this case.  FWS has not admitted any error or deficiency in the 1996 critical habitat

designation, instead noting that FWS has determined the 1996 rule "may be inconsistent" with

two appellate decisions from different circuits.  Joint Memo. at 8.  FWS commits only to

"undertake a new analysis," consistent with legal requirements.  *Id.*  With essentially no

information, the Court should not find that the 1996 rule is seriously deficient.

Even accepting AFRC's allegations as true, the purported errors cannot be said to be

serious enough to require vacatur.  AFRC alleges a variety of substantive and procedural defects

in the critical habitat rule.  *See* Complaint at ¶¶ 47-67.  Procedural deficiencies are generally not

considered serious enough under the first factor to require vacatur.  *See Idaho Farm Bureau,*

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 17 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

58 F.3d at 1405-06 (no vacatur where errors were procedural); *Endangered Species Comm. of the Bldg. Indus. Ass'n of S. Cal. v. Babbitt*, 852 F. Supp. 32, 42 (D.D.C. 1994) (same).  Substantive failures are often considered more severe than procedural errors, *see, e.g., Bldg. Indus. Legal Def. Found. v. Norton (Building Industry),* 231 F. Supp. 2d 100, 105 (D.D.C. 2002), but contrary to the representation of AFRC (AFRC Supp. Memo. at 4-5), such errors are not dispositive that vacatur is appropriate, *see Allied Signal,* 988 F.2d at 151 (substantive defect does not make deficiency serious enough to vacate the rule); *Int'l Union,* 920 F.2d at 966-67 (citing *United Mine Workers of Am. v. Dole,* 870 F.2d 662, 673-74 (D.C. Cir. 1989) *and Md. People's Counsel v. FERC,* 768 F.2d 450, 455 (D.C. Cir. 1985)) ("We have commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, but also where the order was otherwise arbitrary and capricious.").

The heightened concern over substantive errors "derives from a potentially greater likelihood of a significant change to the existing rule during remand."  *Natural Res. Def. Council v. U.S. Dept. of the Interior (NRDC),* 275 F. Supp. 2d 1136, 1145 (C.D. Cal. 2002).  This concern is less important if there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand."  *Allied Signal,* 988 F.2d at 151; *see also Nat'l Ass'n of Home Builders v. Norton (NAHB II),* 2004 WL 3740765, *5 (D. Ariz. June 28, 2004) (severity of error did not weigh in favor of vacatur because court was "unable to predict whether FWS will show that the Arizona pygmy-owl population is significant to the taxon").  The *NRDC* court determined that it was "not in a position to predict what the new [critical habitat] formulation [would] be when the proper criteria [were] considered" and, therefore, could not find that the consequences of the substantive error would be serious.  *Id.*

This case presents a similar situation to *NRDC.*  There is no evidence upon which this

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Court can rely to determine that the consequences of the alleged deficiency are serious enough to warrant vacatur. Despite AFRC's contention that it would be "virtually certain" to prevail, AFRC Supp. Memo. at 5, and its opinion that FWS will not be legally able to adopt the same critical habitat rule on remand, *id.*, AFRC and FWS are not asking the Court to rule on the merits, nor has FWS indicated what it will likely do on remand.[3]  Given that every rule, plan, and review conducted on the health of the murrelet population has stressed the importance and primacy of protecting both occupied and unoccupied murrelet habitat, it is too speculative for this Court or the parties to assume that FWS's revised critical habitat rule will dramatically change. *See, e.g.,* 1996 Critical Habitat Rule, 61 Fed. Reg. at 26,261 ("Current and historic loss of marbled murrelet nesting habitat is generally attributed to timber harvest"); 1997 Marbled Murrelet Recovery Plan at 119 (Administrative Record ("AR") 8082-8367) ("this recovery plan focuses on protecting adequate nesting habitat by maintaining and protecting occupied habitat and minimizing the loss of unoccupied but suitable habitat through several means, including designation of critical habitat…."); 2004 Evaluation Report at 6-30 (AR 5846-6215) ("Although the rate of loss has slowed since listing in 1992, the amount of old-growth forest suitable as breeding habitat and number of occupied sites have declined throughout the breeding range, increasing the most evident threat to murrelet population viability."); 2009 5-Year Review at 29 (AR 8396-8503) ("Although the [Northwest Forest Plan] has reduced the rate of habitat loss due to timber harvest on Federal lands, the threat of continued loss and degradation of suitable nesting habitat remains on Federal and non-Federal lands through timber harvest and natural events such as wildfire, insect outbreaks, and windthrow.").  The Court should not engage in a

---

[3] As FWS has not admitted any legal deficiencies, this case presents a different situation than in *Building Industry*, 231 F. Supp. 2d at 103, where "[a]ll parties, including the responsible agency, agree that the economic analyses used in designating the critical habitats are substantively defective."

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

guessing game as to the seriousness of the deficiency of a rule that has been in place for 16 years.

### 2.   Disruptive consequences of vacatur

The "disruptive consequences" factor weighs strongly in favor of leaving the 1996 rule in place. That factor must be evaluated in light of the purposes of the ESA, which places the highest priority on the protection of imperiled species. *See NAHB II,* 2004 WL 3740765, at *3-4; *NRDC,* 275 F. Supp. 2d at 1145 ("the inquiry turns on the foreseeable risk of harm to [the listed species] during the remand period in the absence of the current critical habitat designations"). As the Supreme Court emphasized in *Tenn. Valley Auth. v. Hill,* "examination of the language, history, and structure of the legislation under review here indicates beyond doubt that Congress intended endangered species to be afforded the highest or priorities." 437 U.S. 153, 174 (1978). Accordingly, courts typically ensure that the most protective rule is in place until the agency fully complies with the ESA. Courts not only refrain from vacating more protective rules during remand, *see, e.g., Idaho Farm Bureau,* 58 F.3d at 1405-06 (retaining ESA listing); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,* 839 F. Supp. 2d 1117, 1129-30 (D. Or. 2011) (retaining protective measures in an otherwise arbitrary biological opinion); *NAHB II,* 2004 WL 3740765, at *4 (retaining ESA listing); *NRDC,* 275 F. Supp. 2d at 1146 (retaining critical habitat); *Endangered Species Comm.,* 852 F. Supp. at 42 (retaining ESA listing), but also vacate those rules that provide less protection than their predecessors, *see, e.g., Ctr. for Native Ecosystems v. Salazar,* 795 F. Supp. 2d 1236, 1243 (D. Colo. 2011) (vacating delisting); *Humane Soc'y of U.S. v. Kempthorne,* 579 F. Supp. 2d 7, 21 (D.D.C. 2008) ("[T]he ESA's preference for protecting endangered species counsels strongly in favor of vacating final rule [that removed protections for Great Lakes wolves.]").

Unlike cases where there was no evidence of foreseeable harm resulting from vacatur, *see Building Industry,* 231 F. Supp. 2d at 105 ("there is no evidence that vacating the critical habitat

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 20 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

designation will lead to significant disruptive consequences."), here, vacatur of the murrelet's

1996 critical habitat rule will harm the species and frustrate the protective purpose of the ESA,

even though the species retains ESA listing protections.  *See NRDC,* 275 F. Supp. 2d at 1147-56

(finding evidence that leaving critical habitat in place will have a "marginal benefit" in reducing

the risk of harm to listed species, so vacatur was not warranted).  A showing that the existing rule

provides "some protection" to the species is sufficient to preclude vacatur.  *Cf. Nat'l Wildlife

Fed'n,* 839 F. Supp. 2d at 1129 ("Vacating the 2008/2010 BiOp would remove beneficial

measures which even Plaintiffs acknowledge provide *some protection* for the species.").

The critical habitat for the murrelet provides greater protection to the species than its

ESA listing alone.[4]  As this Court has previously noted, "the primary protection for species

arising from critical habitat designation is found in Section 7(a)(2) of the ESA."  *Building

Industry,* 231 F. Supp. 2d at 105.  That section requires that a federal agency must ensure that

any action "authorized, funded, or carried out by such agency" is "not likely to jeopardize the

continued existence of any endangered species or threatened species or *result in the destruction

or adverse modification of critical habitat.*" 16 U.S.C. § 1536(a)(2) (emphasis added).

Accordingly, critical habitat is particularly protective in areas presently unoccupied by

the species.  This Court in *Building Industry* found that vacating a critical habitat rule would not

"lead to significant disruptive consequences" for two listed species because "four of the five

vernal pools designated as critical habitat for the fairy shrimp and all of the twenty-two riparian

areas designated as critical habitat for the arroyo toad [were] occupied by the respective species."

231 F. Supp. 2d at 105.  It found that "all of the Section 7 consultations performed in critical

---

[4] Critical habitat has proven to be an effective conservation tool: species with critical habitat are less likely to be declining, and over twice as likely to be recovering as those without.  Taylor *et al.*, The Effectiveness of the Endangered Species Act: A Quantitative Analysis, BioScience, Vol. 55, No. 4, April 2005 (Exhibit B to Boyles Decl.).

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 21 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

habitat areas … would have been completed even in the absence of designation because the presence of the species would have triggered concern over 'jeopard[y] [to] the continued existence' of the species." *Id.* (quoting 16 U.S.C. § 1536(a)(2)).

In contrast, marbled murrelets currently occupy only a small portion of the designated critical habitat necessary for their survival and recovery.  In 1996, 695 occupied murrelet nesting sites had been identified on federal lands.  *See* 61 Fed. Reg. at 26,270 (695 murrelet nest sites identified on federal lands within an almost 4 million acre critical habitat designation).  Section 7 consultations, on both individual projects and programmatic actions, consider impacts to hundreds of acres of murrelet critical habitat every year.  *See, e.g.,* Programmatic Consultation Database, <u>available at</u> <u>http://www.blm.gov/or/esa/reports/Programmatic_consultation_database_</u> <u>sorted_by_region.xls</u> (last visited Sept. 14, 2012).  Without the 1996 rule, many fewer ESA § 7 consultations will occur during remand.  This is unlike the situation in *Building Industry,* 231 F. Supp. 2d at 105, where this Court found that "vacating the existing critical habitat designations is unlikely to impact the number of Section 7 consultations conducted during the remand period."[5]

Even in cases where the protected species is present in critical habitat, critical habitat provides a greater level of protection for the species in § 7 consultations than listing alone.  *See Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.,* 378 F.3d 1059, 1070 (9th Cir. 2004); *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.,* 248 F.3d 1277, 1283 n.2 (10th Cir.

---

[5] Background protections, such as those provided by listing, are sometimes factored into the "disruptive consequences" inquiry.  *See, e.g., Building Industry,* 231 F. Supp. 2d at 106; *NRDC,* 275 F. Supp. 2d at 1153-56.  However, while AFRC and FWS point to the protections of ESA § 9 to adequately compensate for the absence of critical habitat (Joint Memo. at 10), neither § 9 nor § 10 provide equivalent protections to § 7's consultation requirement.  *See NRDC,* 275 F. Supp. 2d at 1154-55.  The criteria under which applicants must apply for § 10 take permits are narrower than the criteria that trigger a § 7 consultation to prevent adverse modification of critical habitat.  *Id.* at 1155.

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 22 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

2001); *Sierra Club v. U.S. Fish & Wildlife Serv.,* 245 F.3d 434, 441-42 (5th Cir. 2001); *Cape Hatteras Access Pres. Alliance v. U.S. Dept. of Interior,* 344 F. Supp. 2d 108, 130 (D.D.C. 2004) (adopting the reasoning in *Sierra Club* and *Gifford Pinchot*); *Defenders of Wildlife v. Norton,* 239 F. Supp. 2d 9, 24 (D.D.C. 2002) ("Thus, the [threatened] Lynx cannot, by definition, receive the full extent of protection provided by the ESA and the Section 7 consultation process until its critical habitat is designated."), *vacated in part as moot,* 89 Fed. Appx. 273 (D.C. Cir. 2004). A § 7 consultation under the jeopardy standard involves an inquiry into whether the action will threaten both the recovery *and* the survival of the species. *Sierra Club,* 245 F.3d at 443.  The adverse modification standard, however, "has broader scope and application."  *NRDC,* 275 F.2d at 1148.

The presence of critical habitat affects the design of projects as well.  As an example, on the Gifford-Pinchot National Forest, the Forest Service designed prescriptions for a timber sale in murrelet critical habitat that included wide gaps within the stand, in an effort to provide for maximum accelerated growth for future murrelet nest trees to help support murrelet recovery. *See* Cowlitz Thin Timber Sale Environmental Assessment excerpt, Boyles Decl. Exhibit C.  It was the designation of critical habitat, not the presence of murrelets, that prompted changes in agency action.  Other federal land projects are routinely influenced by the designation of critical habitat.  *See* North Fork Siuslaw Landscape Management Project, Wildlife Report and Biological Evaluation at 9, underline available at http://a123.g.akamai.net/7/123/11558/abc123/forestservic.download. akamai.com/11558/www/nepa/61594_FSPLT2_124553.pdf (last visited Sept. 14, 2012, finding that no-action alternative would retard agency goals of murrelet and owl recovery because it would not improve murrelet and owl habitat.

Finally, plaintiffs themselves acknowledge that more murrelet habitat will be destroyed if

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

the critical habitat designation is vacated.  Plaintiffs state that their members "seek to purchase

timber sales sold by the Forest Service or BLM in the coastal portions of Oregon, California, and

Washington that contain forests used or potentially used by marbled murrelets," and that they

have been unable to do so as a result of the designation of critical habitat.  Complaint, ¶ 4.

According to plaintiffs, designated murrelet critical habitat is preventing them from logging

these lands.  If the 1996 rule were vacated during remand, § 7 requirements would be less

stringent, if required at all, for timber sales by the Forest Service and BLM in large swaths of

current critical habitat.  This would have "significant disruptive consequences" for marbled

murrelet recovery by irreparably destroying habitat that has been deemed "essential for the

conservation of the species."  61 Fed. Reg. at 26,264.

> C.    FWS's Justifications for Vacating Critical Habitat Do Not Withstand Scrutiny.

> 1.    *The Northwest Forest Plan is not a substitute for critical habitat.*

In enacting the ESA, Congress stated that it was the policy of the United States that all

federal agencies ensure that they were taking steps to protect and recover listed species.

16 U.S.C. § 1531(c)(1).  FWS, however, asserts that there will be no harm to murrelets from

vacating critical habitat by pointing to the actions of land management agencies.  In support of

the joint motion, FWS relies on the existence of the Northwest Forest Plan (a land management

plan adopted by the Forest Service and BLM in 1994) to protect murrelets during the many years

it will take to re-promulgate murrelet critical habitat.  Joint Memo. at 9.

That position is contrary to law.  FWS cannot use non-designated land to evade ESA

compliance.  The Ninth Circuit unequivocally rejected a previous attempt to equate critical

habitat and Northwest Forest Plan protections, dismissing the argument that the protections of

the Northwest Forest Plan were relevant in determining whether logging would adversely modify

critical habitat:

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

> Compliance with the [Northwest Forest Plan], as important as it is, does not in itself generate the same protection for habitat as Section 7 compliance. Congressional intent is clear, and existing or potential conservation measures outside the critical habitat cannot properly be a substitute for the maintenance of critical habitat that is required by [ESA] Section 7.

*Gifford Pinchot,* 378 F.3d at 1076; *see also id.* ("It matters not if there is worthwhile and possibly suitable habitat outside of the designated 'critical habitat;' what mattered to Congress, and what must matter to the agency, is to protect against loss or degradation of the designated 'critical habitat' itself."). *See also Center for Biological Diversity v. Norton*, 240 F. Supp. 2d 1090, 1100 (D. Ariz. 2003); *Middle Rio Grande Conservancy District v. Babbitt,* 206 F. Supp. 2d 1156, 1169 (D.N.M. 2000) (ESA "compels the designation despite other methods of protecting the species the Secretary … might consider more beneficial.").

The agency's current view—that the loss of critical habitat protections will not harm the murrelet because of the regulatory actions of another federal agency—also conflicts with the view FWS held when it first promulgated murrelet critical habitat.  Reviewing the overlap between old-growth forest reserves and murrelet critical habitat, FWS stressed the complimentary, not duplicative, nature of the critical habitat designation.

> These [Late-Successional Reserves], as managed under the Northwest Forest Plan, should develop into large blocks of suitable murrelet nesting habitat given sufficient time.  *However, LSRs are plan-level designations with less assurance of long-term persistence than areas designated by Congress.  Designation of LSRs as critical habitat compliments and supports the Northwest Forest Plan and helps to ensure persistence of this management directive over time.*

61 Fed. Reg. at 26,265 (emphasis added).  In the 2009 5-Year Status Review, FWS stated that although the Northwest Forest Plan protects some murrelets, without critical habitat, "conservation benefits would not likely extend to all areas currently protected for the murrelet." 2009 5-Year Status Review at 10 (AR 8396-8503).  This Court should not defer to FWS's new position that the Northwest Forest Plan adequately replaces critical habitat.  *See F.C.C. v. Fox*

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 25 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

*Television Stations,* 556 U.S. 502, 515 (2009) (agency changing course must recognize the shift, provide good reasons for the change, and explain how new position is consistent with statute).

Additionally, the protections of the Northwest Forest Plan are almost sure to change over the next six years. This year, BLM announced that it would revise the land management plans for its six districts in Oregon that are now governed by the Northwest Forest Plan. 77 Fed. Reg. 14,414 (Mar. 9, 2012). The Okanogan-Wenatchee National Forest, also currently governed by the Northwest Forest Plan, has begun the process to revise its land management rules, and other Northwest Forest Plan forests are likely to follow. *See* Forest Plan Revision, <u>available at</u> <u>http://www.fs.usda.gov/detail/okawen/landmanagement/planning/?cid=fsbdev3_053653</u> (last visited Sept. 14, 2012). FWS's trust that the Northwest Forest Plan can "stand in" for critical habitat for the next six years is misplaced.

>    2.   *Critical habitat plays an important role on non-federal lands.*

FWS also downplays the importance of critical habitat on non-federal lands, stating that most forest management on state and private lands has no federal nexus. Joint Memo. at 10. This is a questionable assumption. Many large private landowners and states themselves have adopted habitat conservation plans ("HCPs") under the ESA that give them a permit allowing take of murrelets in return for mitigating protections. *See* Summaries of All HCP Documents for Marbled Murrelets, <u>available at http://ecos.fws.gov/speciesProfile/profile/displayAllDocuments!</u> <u>hcp.action;jsessionid=97F0BD13801906E627C91F9803FF8C6C?spcode=B08C</u> (last visited Sept. 14, 2012) (listing 14 state and private HCPs, covering hundreds of thousands of acres). HCPs, even though they cover state or private land, must be approved and pass § 7 consultation muster by FWS.

FWS also asserts that the critical habitat designation offers little benefit on private lands. This assertion has been repeatedly criticized by commentators and rejected by the courts. *See*

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

*Conservation Council,* 2 F. Supp. 2d at 1286 ("[T]here are significant substantive and procedural protections that result from the designation of critical habitat outside of the consultation requirements of Section 7."); *see also* Pacific Seabird Group, Impacts to the Marbled Murrelet from loss of suitable nesting habitat in California (March 24, 2010) (noting that "State Lands and private lands with potential habitat play a crucial role in maintaining nesting habitat and ensuring future murrelet recovery"), underline available at http://www.pacificseabirdgroup.org/policy/PSG_ MAMUCal.pdf (last visited Sept. 14, 2012).

On state or private lands, in addition to § 7 consultation on HCPs and other actions with a federal link, the designation "informs the public as well as state and local governments" about the importance of specific areas to the survival and recovery of listed species. *See Conservation Council,* 2 F. Supp. 2d at 1286. Such information may prove useful to people who do not understand the importance of their land and activities, but who wish to ensure that they are not harming murrelets out of goodwill or out of concern for violations of other sections of the ESA. In short, designation of critical habitat helps species and people in the region by focusing attention on the habitats where protection is most important.

In addition, state rules may hinge on critical habitat designation. In Washington, for example, specific State Forest Practices rules are automatically triggered by the presence of critical habitat designation on private lands. 61 Fed. Reg. at 26,264; Wash. Admin. Code § 222-16-050(1). Applicants for forest practices permits in those cases must submit an environmental checklist under the State Environmental Policy Act, in addition to the usual information. *Id.* This provides for additional environmental review of the project's impacts. 61 Fed. Reg. at 26,264. The murrelet's critical habitat covers 2,500 acres of private land (not including state land which contains murrelet habitat) in Washington, *id.* at 26,269, and vacatur of

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 27 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

the 1996 rule would remove the additional environmental protections provided under

Washington law on these lands.

D.    AFRC Will Not Be Prejudiced by Leaving a 16-Year-Old Rule in Place during
      Remand.

Although not explicitly stated in the second *Allied Signal* factor, courts may consider the

"[p]otential prejudice from maintaining the status quo."  *NRDC,* 275 F. Supp. 2d at 1146; *see*

*also Building Industry,* 231 F. Supp. 2d at 107 (leaving rules in place "may erroneously place

regulatory burdens on plaintiffs and others").  *But see Ctr. for Native Ecosystems,* 795 F. Supp.

2d at 1243 ("delay and resultant cost" of ESA consultation required by more protective rule are

"irrelevant" in light of the "balancing process in favor of species protection").  In no case has this

burden been clearly persuasive in determining that vacatur was necessary.  Even if that factor is

considered here, AFRC has not demonstrated that it will be significantly prejudiced by leaving

the 1996 rule in place, as it has been for the last 16 years.  The burden imposed would be less

than that in *Center for Native Ecosystems,* a case in which the decision to revert to a more

protective rule imposed new consultation requirements on the intervenor-defendants.

Balancing the *Allied Signal* factors, equity demands that the Court leave the 1996 rule in

place during remand.  To vacate the designation would have significant disruptive consequences

on the marbled murrelet and its habitat, frustrating the protective purpose of the ESA.

E.    The Length of the Requested Remand Is Contrary to the Public Interest.

Finally, the length of the requested remand—at least six years—is not fair, reasonable, or

in the public interest.  In *Building Industry,* this Court relied on the relatively short remand

period to find no harm from vacatur, particularly given the protections of other ESA sections.

*Building Industry,* 231 F. Supp. 2d at 106 (no identified threats "over the short time frame during

which new rules would be developed").  But even in that case this Court shortened the requested

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 28 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

time period for revision of critical habitat from 31 months to 21 months.  *Id.* at 107-08 ("despite FWS's resource allocation issues, the Court shall order that the proposed rules for new critical habitat designations for both species be completed within 21 months").

FWS presents its recent settlement of the Multi-District Litigation case as explanation for the long remand period.  *See* Declaration of Gary Frazer, ¶¶ 17-25 (Aug. 10, 2012).  Audubon will not comment on the prudence of FWS leaving itself no buffer for unexpected actions, and clearly the Multi-District settlement cannot stop the agency from complying with later court orders.  However, FWS's alleged incapacity[6] to address murrelet critical habitat in a reasonable time-frame is another reason why its decision to agree to vacatur is unjust and not in the public interest.  FWS is voluntarily agreeing to vacate critical habitat while at the same time asserting that its hands are tied for many years to do anything else.  Audubon asks the Court to reject the consent decree in its entirety, but at the very least, the Court should shorten the time-period for the murrelet to regain its critical habitat substantially – to no more than 12 months.

CONCLUSION

AFRC and FWS have presented a consent decree to this Court for approval over which the Court does not have jurisdiction.  For this reason alone, the Court should reject the consent decree and dismiss AFRC's claims against the 1996 murrelet critical habitat rule.  Moreover, the consent decree attempts to vacate a 16-year-old federal rule with no public process or even admission of legal defect, contrary to the law of this Circuit.  Finally, even under the more generous standard for review of consent decrees, this agreement is neither fair, reasonable, nor in the public interest, for it would deprive the marbled murrelet in Washington, Oregon, and

---

[6] This Court "must scrutinize . . . claims [of impracticability] carefully since officials may seize on a remedy made available for extreme illness and promote it into the daily bread of convenience."  *Natural Res. Def. Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

California of the habitat protections it needs to survive and recover for at least six years.  For the

reasons discussed above, Audubon asks the Court to reject the proffered consent decree.

Respectfully submitted this 14th day of September, 2012.


s/  Kristen L. Boyles
PATTI GOLDMAN (DCB# 398565)
KRISTEN L. BOYLES (WSB #23806)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
pgoldman@earthjustice.org
kboyles@earthjustice.org

*Attorneys for Defendant-Intervenors Audubon Society of Portland, Seattle Audubon Society, Center for Biological Diversity, Oregon Wild, Conservation Northwest, Environmental Protection Information Center, and Sierra Club*

DEFENDANT-INTERVENORS' OPPOSITION TO
PROPOSED CONSENT DECREE   - 30 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington.  I am over

18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite

203, Seattle, Washington 98104.

On September 14, 2012, I served a true and correct copy of:

1.    Defendant-Intervenors' Opposition to Proposed Consent Decree; and
2.    Declaration of Kristen L. Boyles in Support of Defendant-Intervenors' Opposition
      to Proposed Consent Decree.

on the parties listed below:

Mark C. Rutzick
12402 Myra Virginia Court                        ☐ via overnight mail
Oak Hill, VA  20171                              ☐ via first-class U.S. mail
(703) 870-7347 | Phone and Fax                   ☒ via Court ECF system
markrutzick@rutzick.com                          ☐ via email
*Attorney for Plaintiffs*

Meredith L. Flax
U.S. Department of Justice                       ☐ via overnight mail
Environment & Natural Resources Division         ☐ via first-class U.S. mail
Wildlife and Marine Resources Section            ☒ via Court ECF system
P.O. Box 7369                                    ☐ via email
Washington, D.C.  20044-7369
**Street Address**:
601 D Street, N.W., Room 3908
Washington, D.C.  20004
(202) 305-0404 | Phone
(202) 305-0275 | Fax
meredith.flax@usdoj.gov
*Attorney for Federal Defendants*

I, Catherine Hamborg, declare under penalty of perjury that the foregoing is true and

correct.  Executed on this 14th day of September, 2012, at Seattle, Washington.

Catherine Hamborg

CERTIFICATE OF SERVICE   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*