UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN FOREST RESOURCE COUNCIL**; **CARPENTERS INDUSTRIAL COUNCIL**; and **DOUGLAS COUNTY, OREGON**, | ) ) ) ) ) | Civil No. 12-111-JDB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **DANIEL M. ASHE**, Director, U.S. Fish and Wildlife Service; and **KEN SALAZAR**, Secretary of Interior, | ) ) ) ) | |
| Defendants | ) ) | |
| and | ) ) | |
| **AUDUBON SOCIETY OF PORTLAND**, et al., | ) ) ) | |
| Intervenor-Defendants | ) ) | |
| _____ | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION**

**FOR ENTRY OF CONSENT DECREE**

### Table of Contents

Introduction ................................................................................................................1

Argument ................................................................................................................15

I.      APPROVING THE CONSENT DECREE DOES NOT REQUIRE THE COURT TO FIND
        JURISDICTION OVER EACH OF AFRC'S CLAIMS OR EACH ELEMENT OF THE
        CONSENT DECREE; THE COURT IS ONLY REQUIRED TO HAVE JURISDICTION
        OVER SOME OF THE CASE, WHICH IT CLEARLY DOES, AND A CONSENT
        DECREE CAN CONTAIN RELIEF BEYOND WHAT WOULD HAVE BEEN
        AVAILABLE IN LITIGATION ..................................................................................4

A.      AFRC is challenging decisions in 2008 and 2011, not 1996. .............................................4

B.      Recent authority suggests that the statute of limitations in 28 U.S.C. §2401(a) is   not
        "jurisdictional."..................................................................................................................9

C.      In this case, where FWS has chosen to forgo a statute of limitations defense in favor of
        entering into a Consent Decree, Audubon may not assert the statute of limitations as a defense
        to the action or the Consent Decree..................................................................................12

D.      In any event, the FWS critical habitat rulemakings in 2006-08 and 2008-11 reopened the
        decisions in the 1996 decision that are indirectly challenged in this case, and judicial review
        of those claims is timely.. ..................................................................................................13

        1.      Administrative History...........................................................................................13

        2.      The 2006-08 rulemaking reopened the 1996 critical habitat rule...........................15

        a.      D.C. Circuit law holds that reopening an earlier-made agency decision requires only
                two agency acts: initiation of a formal APA rulemaking proceeding, and an invitation
                for public comment on a proposed rule that is broad enough to encompass the earlier-
                made    decision..................................................................................................15

        b.      The reopening doctrine is applicable to AFRC's claims in this case........................18

II.     THE COURT CAN VACATE THE 1996, 2008 AND 2011 CRITICAL HABITAT RULES
        AS PART OF THE CONSENT DECREE WITHOUT REACHING THE MERITS OF
        AFRC'S CLAIMS AND WITHOUT REQUIRING FWS TO CONDUCT RULEMAKING
        ..................................................................................................................................22

A.      No requirement to reach merits..........................................................................................22

B.      No exception for notice-and-comment rules........................................................................23

III.    THE "PUBLIC INTEREST" IS NOT COEXTENSIVE WITH UNBOUNDED
        ENVIRONMENTAL REGULATION ..............................................................................24

Conclusion ..............................................................................................................25

**Table of Authorities**

**Cases**

*Am. Iron & Steel Institute v. U.S. E.P.A.*, 886 F.2d 390 (D.C.Cir.1989) .................................17

*Am. Road & Transp. Builders Ass'n v. E.P.A.*, 588 F.3d 1109 (D.C. Cir. 2009) ......................16

*Assoc. of Am. Railroads v. ICC*, 846 F.2d 1465 (D.C.Cir.1988).........................................16,18,19

*Basel Action Network v. U.S. E.P.A.*, 2012 WL 2279248 (N.D.Cal. 2012)................................12

*Bennett v. Spear*, 520 U.S. 154 (1997) ...........................................................................................25

*Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999 (6th Cir. 2012) .............................................10

*Carpenters Indus. Council v. Salazar*, 734 F.Supp.2d 126 (D.D.C. 2010)..............................24

*Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997)................................11

*Center for Biological Diversity v. Bureau of Land Man.*, 2001 WL 777088 (N.D.Cal. 2001) ......8

*\*Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117 (D.C. Cir. 1983)......................22

*Clymore v. U.S.*, 217 F.3d 370 (5th Cir. 2000)..............................................................................11

*Columbia Falls Aluminum Co. v. E.P.A.*, 139 F.3d 914 (D.C. Cir.1998)................................16,19

*Conservation Law Found. of N. E., Inc. v. Franklin*, 989 F.2d 54 (1st Cir. 1993) ......................6

*Cronin v. Browner*, 898 F.Supp. 1052 (S.D.N.Y. 1995). ..............................................................3

*CTIA-Wireless Ass'n v. F.C.C.*, 466 F.3d 105 (D.C. Cir. 2006)........................................16,19

*Domestic Securities, Inc. v. S.E.C.*, 333 F.3d 239 (D.C. Cir. 2003) ...........................................17

*Douglas Timber Operators, Inc. v. Salazar*, 774 F.Supp.2d 245 (D.D.C. 2011) .......................24

*Duran v. Carruthers*, 885 F.2d 1485 (10th Cir. 1989).................................................................7

*Edison Elec. Institute v. U.S. E.P.A.*, 996 F.2d 326 (D.C. Cir. 1993)................................16,18,19

*E.E.O.C. v. Product Fabricators, Inc.*, 666 F.3d 1170 (8th Cir. 2012) ......................................6

*Environmental Defense v. E.P.A.*, 467 F.3d 1329 (D.C. Cir. 2006) ..........................................17

*Environmental Defense v. Leavitt*, 329 F.Supp.2d 55 (D.D.C. 2004) .........................................36

*Evans v. Fenty*, 701 F.Supp.2d 126 (D.D.C. 2010) .....................................................................7

*Fox Television Stations, Inc. v. F.C.C.*, 280 F.3d 1027 (D.C. Cir. 2002).....................................4

*\*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004).................................................................6

*Frith v. U.S.*, 268 F.R.D. 177 (S.D.N.Y. 2010)...........................................................................12

*General Motors Corp. v. E.P.A.*, 363 F.3d 442 (D.C. Cir. 2004) ............................................17

*\*Gonzalez v. Thaler*, 132 S.Ct. 641 (2012) .............................................................10,11,12,13

*Grocery Mfrs. Ass'n v. E.P.A.*, --- F.3d ----, 2012 WL 3538217 (D.C. Cir. August 17, 2012) .....11

*\*Home Builders Ass'ns of N. California v. Norton*, 293 F. Supp. 2d 1 (D.D.C. 2002)................23

*Howard v. Blank*, --- F.Supp.2d ----, 2012 WL 4096370 (D.D.C. September 19, 2012)..............11

*Irwin v. Vet. Admin.*, 498 U.S. 89 (1990)....................................................................................11

*Jordan v. Quander*, --- F.Supp.2d ----, 2012 WL 3218515  (D.D.C. August 9, 2012)....................9

*Kasper v. Board of Election Com'rs of the City of Chicago*, 814 F.2d 332 (7th Cir. 1987) .........23

*Kennecott Utah Copper Corp. v. U.S. Dept. of Interior*, 88 F.3d 1191 (D.C. Cir.1996) ............17

*Kozlowski v. Coughlin*, 871 F.2d 241 (2d Cir.1989) ...................................................................7

*La. Env. Action Network v. City of Baton Rouge*, 677 F.3d 737 (5th Cir. 2012) .........................10

*Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Regional Planning Agency*,
    24 F.Supp.2d 1062, 1068 (E.D.Cal. 1998).........................................................................13

*\*Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
    478 U.S. 501, 525 (1986)......................................................................................................6,7

*Martinez v. Napolitano*, 2012 WL 1044621 (D. Colo. 2012)........................................12

*McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325........ (9th Cir. 2012) ........................10

*Metropolitan Housing Development Corp. v. Village of Arlington Heights*,
    616 F.2d 1006, 1014 (7th Cir. 1980) ........................................................23

*Mont. v. Clark*, 749 F.2d 740 (D.C.Cir.1984), *cert. denied*, 474 U.S. 919 (1985). ............4,16,19

*National Association of Home Builders v. Evans*, 2002 WL 1205743 (D.D.C.2002)...................24

*Nat. Ass'n of Reversionary Property Owners v. Surface Transp. Bd.*,
    158 F.3d 135 (D.C. Cir. 1998)..........................................................13,17,18

*Nat. Min. Ass'n v. U.S. Dept. of Interior*, 70 F.3d 1345 D.C. Cir. 1995) ...................................17

*Nat'l Parks Conservation Ass'n v. Salazar,* 660 F. Supp. 2d 3 (D.D.C. 2009)............................24

\*National Petrochemical & Refiners Ass'n v. E.P.A., 287 F.3d 1130 (D.C. Cir. 2002) ...............17

*Nat. Res. Def. Council v. E.P.A.*, 571 F.3d 1245 (D.C. Cir. 2009) ...........................................16

*Nat. Res. Def. Council v. Whitman*, 2001 WL 1221774 (N.D.Cal. 2001). ....................................8

*P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021 (D.C.Cir.2008)........................11,17

\*Public Citizen v. Nuclear Reg. Com'n, 901 F.2d 147 (D.C. Cir. 1990)...........................16,18,19

*Recent Past Preservation Network v. Latschar*, 701 F.Supp.2d 49 (D.D.C. 2010) ......................12

*Roy v. U.S.*, 2012 WL 1130163 (D. Colo. 2012).................................................................12

*Sansom Committee by Cook v. Lynn*, 735 F.2d 1535 (3d Cir. 1984)..............................................7

*Sierra Club v. Browner*, 1994 WL 750290 (D.D.C. 1994).......................................................8

*Sierra Club v. E.P.A.*, 551 F.3d 1019 (D.C. Cir. 2008)......................................................16

*State of Ohio v. U.S. E.P.A.*, 838 F.2d 1325 (D.C.Cir.1988)..............................................16,19

*Stotts v. Memphis Fire Dept.*, 679 F.2d 541 (6th Cir. 1982) ...............................................23

*U. S. v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir.1991)...........................................3

*U.S. v. City of Jackson, Miss.*, 519 F.2d 1147 (5th Cir. 1975)...............................................23

*U.S. v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995)...................................................23

*U.S. v. Wells Fargo Bank, NA*,2012 WL 4130513 (D.D.C. September 20, 2012) ........................23

*United Transp. Union-Illinois Legislative Bd. v.  Surface Transp. Bd.*,
    132 F.3d 71 (D.C. Cir. 1998) .............................................................17

*WildEarth Guardians v. Jackson*, 2011 WL 4485964 (D. Colo. 2011). ........................................8

**Statutes**

16  U.S.C.  §1533(b)(2)...........................................................................21

28  U.S.C.  §2401(a)  ..................................................................1,8,9,11,12,22

**Other Authorities**

61 Fed. Reg. 26256 (May 24, 1996)...................................................................4,21

71 Fed. Reg. 53847 (September 12, 2006) .............................................................14,20,21

73 Fed. Reg. 12067 (March 6, 2008) ..................................................................14,20,21

73 Fed. Reg. 44678. (July 31, 2008)...................................................................15

76 Fed. Reg. 61599. (October 5, 2011)................................................................15

*Authorities chiefly relied on are indicated with an *

**Introduction**

Defendant-intervenors Audubon Society of Portland, *et al.* (Audubon's) statute of limitations objection to the Consent Decree fails on four separate grounds:

1.   The proper legal standard for approval of a consent decree does not require the court to verify that every pleaded claim is timely and within the court's jurisdiction.  The court has authority to approve a consent decree if some of the pending claims confer subject matter jurisdiction, even if there is doubt on other claims and the relief in the consent decree goes beyond relief the court could grant at the end of litigation.

Here, there can be no doubt (and Audubon does not dispute) that two of AFRC's critical habitat claims (Fifth and Seventh) arose in 2008 and 2011, and are timely under the applicable six year statute of limitations in 28 U.S.C. §2401(a).  The court's subject matter jurisdiction over those claims is sufficient for the entire Consent Decree even if the relief goes beyond what could come out of those two claims.

2.   Recent Supreme Court cases cast doubt whether 28 U.S.C. §2401(a) is in fact "jurisdictional;" if it is not, then no "jurisdictional" issue is presented by a limitations issue.

3. Since the government has waived any statute of limitations defense it may have by agreeing to the Consent Decree, Audubon, as an intervenor who may only litigate issues raised by the parties, may no longer raise a statute of limitations defense.

4.   In any event, under the D.C. Circuit's "reopening doctrine," AFRC's Fourth and Sixth Claims, which challenge decisions first made in the FWS 1996 critical habitat rule and carried forward

Page 1 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347  ●  E-mail: markrutzick@rutzick.com

through the FWS rulemakings in 2006-08 and 2008-11, are timely and within the Court's jurisdiction. Synthesis of the D.C. Circuit cases shows that the reopening doctrine is applied on an issue-specific basis, has just two required elements, and both are present in this case:  1) initiation of a formal APA rulemaking proceeding to amend, replace or retain an earlier-made regulatory decision that appears in an existing rule that the plaintiff is challenging; and 2) an agency invitation for public comment broad enough to encompass that decision.  In 2006 FWS opened a rulemaking proceeding to revise murrelet critical habitat, as its 2003 Settlement Agreement with AFRC required, proposing to revise some features of the 1996 designation while retaining the core habitat identification methodology in the old rule, and expressly invited comment on that methodology.

Contrary to Audubon's position, the reopening case law does not also require that the "agency [must] publish[] a final rule that re-adopts the prior rule and include[] a response to comments explaining the agency's decision to continue to adhere to the old rule." Opp. at 6-7.  No decision has ever held either event necessary to reopening, and both are rarely mentioned in the cases.  That FWS ended the rulemaking in 2008 with a cursory notice stating that the 1996 rule "remains in effect," and never published responses to the many comments submitted by the public, may speak volumes about FWS' APA compliance techniques, but says nothing about the reopening issue.

Audubon's misreading of the reopening cases led it to arguments that are both legally irrelevant and factually incorrect:  its claim that FWS "abandoned" the rulemaking process although the record shows FWS completed it; and its claim that FWS planned to "completely rewrite" the 1996 rule when by the agency's own admission it proposed only "minor adjustments to the original

Page 2 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347  ●  E-mail: markrutzick@rutzick.com

designation."

On other issues, Audubon's call for the Court to determine the merits of AFRC's claims before approving the Consent Decree is contrary to the long-settled rule, from the Supreme Court down, that no such merits finding is required. Its urging for an exception to that rule for APA rules requiring notice and comment has no authority in support of it, and cases from this district against it.

Finally, Audubon's plea for a public-interest-based rejection of the Consent Decree because it would eliminate murrelet critical habitat for several years has no factual support, but instead is based on a myopic, one-dimensional view of the public interest that ignores everything except environmental protection, and assumes all environmental regulation is good. The Court should reject that plea in favor of a broader vision of public interest that takes economic and social factors into account as well as environmental protection.

A consent decree "is entitled to a presumption in favor of settlement." *Cronin v. Browner*, 898 F.Supp. 1052, 1064 (S.D.N.Y. 1995). This presumption "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency ... which enjoys substantial expertise in the environmental field." *U. S. v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir.1991). "The policy of favoring consent decrees has particular force where a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Environmental Defense v. Leavitt*, 329 F.Supp.2d 55, 70 (D.D.C. 2004) (citation, quotation and elision omitted). The Consent Decree proposed here,

Page 3 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

conceived and largely drafted by FWS, meets every legal standard and should be approved.

<u>**Argument**</u>

I.     **APPROVING THE CONSENT DECREE DOES NOT REQUIRE THE COURT TO FIND JURISDICTION OVER EACH OF AFRC'S CLAIMS OR EACH ELEMENT OF THE CONSENT DECREE; THE COURT IS ONLY REQUIRED TO HAVE JURISDICTION OVER SOME OF THE CASE, WHICH IT CLEARLY DOES, AND A CONSENT DECREE CAN CONTAIN RELIEF BEYOND WHAT WOULD HAVE BEEN AVAILABLE IN LITIGATION**

Audubon contends, citing no authority, that the court may not approve the Consent Decree until the Court determines whether any of AFRC's claims are barred by the six-year statute of limitations in 28 U.S.C. § 2401(a). Opp. at 3-10. Audubon further argues that AFRC's claims challenge FWS' 1996 marbled murrelet critical habitat rule, 61 Fed. Reg. 26256 (May 24, 1996), and contends those claims are untimely because more than six years passed before suit was filed, and the D.C. Circuit's "reopening doctrine" does not apply in this case. This argument rests on a legally-flawed premise, and lacks both legal and factual support.

A.     <u>**AFRC is challenging decisions in 2008 and 2011, not 1996.**</u>

First, Audubon is mistaken because AFRC does not have any claims challenging the 1996 rulemaking decision. All of AFRC's critical habitat claims challenge FWS decisions made in 2008 and 2011.

1. Two of AFRC's the claims do not question any decision made in the 1996 rule. The Fifth Claim alleges FWS' 2008 decision violated the ESA's requirement for critical habitat decisions to be "based on the best available scientific and commercial data" because FWS failed to use the updated

Page 4 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

biological and economic analysis it had prepared in fulfillment of the 2003 Settlement Agreement. The Seventh Claim challenges a 2011 regulatory announcement reinterpreting the 1996 rule to apply to vast acreages not previously considered to be covered.  Neither of those claims has any plausible statute of limitations bar.

b. AFRC's Fourth Claim, alleging FWS violated the ESA with an "unlawful designation of critical habitat that was not occupied at the time of listing," Complaint, ¶50, and AFRC's Sixth Claim, alleging FWS violated the ESA by designating critical habitat that "does not currently contain physical or biological features essential to the conservation of the species," Complaint, ¶60,  involve unlawful agency decisions first made in 1996, but the challenges are to FWS' failure to remedy those violations in 2008 and 2011 by choosing to keep the unlawful 1996 rule in place.

The Court has jurisdiction over the Fourth and Sixth claims as much as the Fifth and Seventh. The 2008 decision not to revise the 1996 rule was judicially-reviewable final agency action.  "There is no question a[n agency] determination not to repeal or to modify a rule, after giving notice of and receiving comment upon a proposal to do so, is a final agency action subject to judicial review." *Fox Television Stations, Inc. v. F.C.C.*, 280 F.3d 1027, 1037 (D.C. Cir. 2002).  "The law in this circuit is clear that an agency decision not to amend long-standing rules after a notice and comment period is reviewable agency action."  *Mont. v. Clark*, 749 F.2d 740, 744 (D.C.Cir.1984), *cert. denied*, 474 U.S. 919 (1985).  Likewise, FWS' critical habitat amendment in 2011 was final agency action. Audubon does not dispute that FWS made those decisions in 2008 and 2011, and does not contend that the six year statute of limitations bars claims arising in 2008 or 2011.  AFRC's claims are timely

Page 5 -  **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

and the Court has jurisdiction over such claims.

Though Audubon cites no authority and articulates no rationale for the jurisdictional review it insists is required, Audubon may believe that the Court can not rest on the jurisdictional basis pleaded in the complaint, but instead is obligated to independently examine the claims to determine if those claims do not actually challenge the 2008 decision, but are in reality untimely attacks on the 1996 rule that are barred by the statute of limitations and not redeemed by the D.C. Circuit's reopening rule. Audubon may further believe that if the Court finds that some or all claims are barred by the statute of limitations, the Court is required to reject the Consent Decree as beyond the Court's jurisdiction. Or, perhaps Audubon believes that the Court could not approve a Consent Decree vacating the 1996 rule unless it first determines that the Court would have subject matter jurisdiction over a claim directly seeking to vacate the 1996 rule.

Supreme Court precedent rejects all three of these potential theories, and establishes a far lower jurisdictional bar for judicial approval of a consent decree – one that is easily met in this case: "a federal consent decree must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004), *citing Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland ("Firefighters"),* 478 U.S. 501, 525 (1986); *E.E.O.C. v. Product Fabricators, Inc.,* 666 F.3d 1170, 1172 (8th Cir. 2012) (same); *Conservation Law Found. of N. E., Inc. v. Franklin,* 989 F.2d 54 (1st Cir. 1993) (approving settlement of challenge to federal fishery

Page 6 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

management plan over objection of intervenors); *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir.1989) (citing *Firefighters*); *Evans v. Fenty*, 701 F.Supp.2d 126, 165 (D.D.C. 2010) (same).

This case plainly satisfies the Supreme Court standard.  There can be no doubt AFRC's Fifth and Seventh claims challenging the 2008 and 2011 FWS decisions present "a dispute within the courts' subject-matter jurisdiction," and that the Consent Decree "spring[s] from and serve[s] to resolve" those claims.  The FWS commitments in the Consent Decree are unquestionably "within the general scope of the case made by the pleadings;" and AFRC's acceptance of the Consent Decree confirms that it "furthers the objectives upon which the complaint was based."

The Supreme Court standard also forecloses Audubon's potential alternate theory that the scope of relief in a Consent Decree can be no broader than the Court's underlying subject matter jurisdiction (if indeed that is Audubon's belief).  "[A] federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial." *Firefighters*, 478 U.S. at 525.  "These three [*Firefighters*] conditions are sufficient even if the decree contains broader relief than the court could have awarded after trial." *Duran v. Carruthers*, 885 F.2d 1485, 1491 (10th Cir. 1989); *Sansom Committee by Cook v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984).  Here, there can be no doubt the "pleadings' general scope" extends to the 1996 critical habitat rule.

The *Firefighters* standards for approving consent decrees apply to settlements of APA cases against federal agencies.  "[A]lthough a court may enter a consent decree that provides for greater relief than the court could award after a trial, *see Firefighters*, 478 U.S. at 525, it cannot enter a

Page 7 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

consent decree if it lacks subject matter jurisdiction over the underlying action." *WildEarth Guardians v. Jackson*, 2011 WL 4485964 *3 (D. Colo. 2011). "[A] court may enter a consent decree that provides relief beyond what a court could otherwise accord so long as some substantial part of it was within its jurisdiction. ... [T]here is jurisdiction over this action pursuant to the APA. The consent decree resolves this dispute. That the parties wish to fold other relief into the consent decree does not run afoul of *Firefighters*, because the consent decree resolves a dispute within this Court's subject-matter jurisdiction." *Nat. Res. Def. Council v. Whitman*, 2001 WL 1221774 *11 (N.D.Cal. 2001). "[Intervenor] has also argued that some of the relief in the consent decree exceeds the relief that plaintiffs could have obtained after a trial. Even if this were true, as long as a consent decree comes within the general scope of the case made by the pleadings and furthers the objectives upon which the law is based, a court may enter a consent decree that provides broader relief than the court could have awarded after a trial." *Center for Biological Diversity v. Bureau of Land Man.*, 2001 WL 777088 *9 (N.D.Cal. 2001) (brackets, citations and quotations omitted).

An almost identical situation was presented in *Sierra Club v. Browner*, 1994 WL 750290 (D.D.C. 1994), where the plaintiff and defendant agency entered into a consent decree that included regulatory steps (adding to a list of marine vessel loading emissions) that the court could not have ordered the agency to take. A regulated company (Alyeska) sought intervention to challenge the court's jurisdiction to approve the consent decree with the added regulatory burden, making precisely the jurisdictional argument Audubon presents here. The Court rejected the argument for precisely the reasons set forth above:

Page 8 -        **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

> Alyeska's approach to the question before the Court conflates the procedural question in this action—whether entry of a negotiated consent decree is an appropriate exercise of this Court's equitable powers—with the entirely different question of whether this Court would have jurisdiction to order EPA to perform a discretionary duty if no settlement had been consummated between the main parties.
>
> ...
>
> Alyeska's attempt to fashion the question of relief that arguably reaches beyond the underlying statute in a consent decree situation as one of "jurisdiction" lacks support in the governing case law.

*Id*. at *1-2.

Thus, the premise of Audubon's jurisdictional objection fails – approval of the Consent Decree does not require the Court to determine whether it would have subject matter jurisdiction over challenges to the 1996 critical habitat rule.

**B.    <u>Recent authority suggests that the statute of limitations in 28 U.S.C. §2401(a) is not "jurisdictional."</u>**

Audubon's premise fails for a third reason: the older view that the statute of limitations in 28 U.S.C. §2401(a) is "jurisdictional," which Audubon cites in its Opposition, has been put in doubt by a series of cases in the Supreme Court, D.C. Circuit and elsewhere addressing the standards for determining whether a limitations statute is properly labeled "jurisdictional."

The distinction between a "jurisdictional" and "nonjurisdictional" statute of limitations has relevance to this case because under the Federal Rules of Civil Procedure, the statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and therefore "[s]tatutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and 'jurisdictional' statutes that are not subject to waiver or equitable tolling." *Jordan v. Quander*, --- F.Supp.2d ----, 2012 WL

Page 9 -        **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

3218515 *2 (D.D.C. August 9, 2012).  FWS can waive a non-jurisdictional limitation, and its decision to enter into a Consent Decree in this case represents such a waiver (although the defense would not apply anyway for the reasons shown below).  As an intervenor, Audubon may not raise an issue the government has chosen to forgo.

In  *Gonzalez v. Thaler*, 132 S.Ct. 641, 648 (2012), the Supreme Court synthesized and restated the rule for determining whether a limitation period is "jurisdictional" or subject to waiver:

> This Court has endeavored in recent years to "bring some discipline" to the use of the term "jurisdictional." …. Recognizing our "less than meticulous" use of the term in the past, we have pressed a stricter distinction between truly jurisdictional rules, which govern "a court's adjudicatory authority," and nonjurisdictional "claim-processing rules," which do not. ...
>
> We accordingly have applied the following principle: A rule is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." … But if "Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." …

*Id.* at 648 (citations, brackets and quotations omitted).  The limitations period in 28 U.S.C. §2401(a) does not "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional," and therefore does not meet the reformulated standard for "jurisdictional" under *Gonzalez*.  *See La. Env. Action Network v. City of Baton Rouge,* 677 F.3d 737, 748 (5th Cir. 2012) (applying *Gonzalez* to find a statutory limitation nonjurisdictional because statute does not state it is jurisdictional); *Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999, 1003 (6th Cir. 2012) (following *Gonzalez* to find a limitation nonjurisdictional); *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, (9th Cir. 2012) (reversing circuit precedent in light of *Gonzalez*).

Page 10 -       **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

*Gonzalez* follows a series of Supreme Court decisions beginning in *Irwin v. Vet. Admin.*, 498 U.S. 89 (1990), which announced a new general rule that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id*. at 95-96.  The Fifth Circuit, in *Clymore v. U.S.*, 217 F.3d 370 (5th Cir. 2000), and the Ninth Circuit, in *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997), both relied on *Irwin* to hold that §2401(a) is not "jurisdictional" and therefore the doctrine of equitable tolling applies to claims under that statute.  The D.C. Circuit has recognized that 28 U.S.C. § 2401(a) may be nonjurisdictional, without yet deciding the issue. *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007).

AFRC acknowledges that in *Howard v. Blank*, --- F.Supp.2d ----, 2012 WL 4096370 (D.D.C. September 19, 2012), the Court found it "compelled to hold that § 2401(a) is jurisdictional," *id*. at *3, as a result of the D.C. Circuit decision in *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026–27 (D.C.Cir.2008), which declined to review the older precedents because neither party had questioned them.   The *Howard* decision did not, at least explicitly, consider the new "jurisdictional" standard announced in *Gonzalez*, and the earlier D.C. cases cited in the decision all pre-date *Gonzalez*.  *See Grocery Mfrs. Ass'n v. E.P.A.,* --- F.3d ----, 2012 WL 3538217 *13 (D.C. Cir. August 17, 2012)  (Kavenaugh, C.J., concurring and dissenting) (discussing impact of *Gonzalez* and other recent Supreme Court cases on determination of whether prudential standing is "jurisdictional" and "nonjurisdictional"; would find prudential standing nonjurisdictional and not properly before the court because defendant waived the defense).  Further, judges in this district

Page 11 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

continue to be divided on the § 2401(a) issue, establishing, if nothing else, that the issue remains unclear. *Recent Past Preservation Network v. Latschar*, 701 F.Supp.2d 49, 58 (D.D.C. 2010) ("in this Circuit ... 28 U.S.C. § 2401(a) has been treated as non-jurisdictional") (citing cases).  Courts in other circuits continue to view 28 U.S.C. § 2401(a) as nonjurisdictional.  *Roy v. U.S.*, 2012 WL 1130163 *3 (D. Colo. 2012); *Basel Action Network v. U.S. E.P.A.*, 2012 WL 2279248 *6 (N.D.Cal. 2012); *Martinez v. Napolitano*, 2012 WL 1044621 *3 (D. Colo. 2012); *Frith v. U.S.*, 268 F.R.D. 177, 180 (S.D.N.Y. 2010).

The Court need not wade into the significance of *Gonzalez* on § 2401(a) jurisprudence, an issue likely to be decided ultimately by the Supreme Court, on the basis of an overbroad objection by Audubon.  The Court can and should find sufficient jurisdiction in this case to approve the Consent Decree with addressing Audubon's motion.

**C.        In this case, where FWS has chosen to forgo a statute of limitations defense in favor of entering into a Consent Decree, Audubon may not assert the statute of limitations as a defense to the action or the Consent Decree.**

Where the defendant has determined to settle rather than litigate the case and raise a statute of limitations defense, the intervenor may not raise the statute of limitations as Audubon seeks to do here:

> The [intervenor] is prohibited from raising a statute of limitations defense. An intervenor is limited to the field of litigation open to the original parties; it cannot enlarge the issues tendered by or arising out plaintiff's bill.  ...  The statute of limitations was not raised by [defendant] and therefore goes beyond the scope of the original litigation.

Page 12 -        **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

*Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Regional Planning Agency*, 24 F.Supp.2d 1062,

1068 (E.D.Cal. 1998).  This rule is in accord with the broader principle that "an intervenor can only

address issues raised by a party."  *Nat. Ass'n of Reversionary Property Owners v. Surface Transp.*

*Bd.*, 158 F.3d 135, 141 n. 12 (D.C. Cir. 1998).[1]

**D.      In any event, the FWS critical habitat rulemakings in 2006-08 and 2008-11 reopened the decisions in the 1996 decision that are indirectly challenged in this case, and judicial review of those claims is timely.**

Should the Court choose to consider whether it has jurisdiction over AFRC's challenges to

decisions first made in the 1996 critical habitat rule, the Court should find that the FWS 2006-08

critical habitat rulemaking, and its 2011 critical habitat amendment, reopened AFRC's legal

challenges to the agency's 1996 decisions under the D.C. Circuit's "reopening doctrine."

**1.      Administrative History**

a.  AFRC and the Interior Department entered into a Settlement Agreement in 2003 in which

FWS agreed to perform a 5-Year Review of the tri-state murrlet DPS and to "conduct a rulemaking

to consider potential revisions to Murrelet critical habitat in accordance with ESA Section 4(b)(2)

and 4(a)(3)(b)."  Exhibit A hereto.

------------------------------------------

[1]While Audubon may not raise the statute of limitations when the government chooses not to do, it remains true that "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."  *Gonzalez*, 132 S.Ct. at 648.  But in giving *sua sponte* consideration to its jurisdiction, the Court need only determine that it has jurisdiction over some of AFRC's claims, as shown in Point I above, and there is no question it does.  The Court need not consider Audubon's contention that the Court lacks jurisdiction over claims challenging the 1996 rule because that is not the applicable jurisdictional issue for approval of the Consent Decree.

Page 13 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

b.   In 2006 FWS published in the Federal Register a proposed rule to "revise currently designated critical habitat for the marbled murrelet ... in Washington, Oregon, and California ...." 71 Fed. Reg. 53838 (September 12, 2006).  FWS relied on "the current [*i.e.*, 1996] marbled murrelet critical habitat designation based on forest stand maps." 71 Fed. Reg. 53844.  FWS invited public comment on seven broad issues encompassing the full range of critical habitat issues including the two specific issues raised by AFRC in this case:

> Comments particularly are sought concerning:
> ...
> Specific information on the amount and distribution of marbled murrelet habitat, and <u>what areas that were occupied at the time of listing that contain the features that are essential for the conservation of the species</u> should be included in our revised designation, and why and what areas that were not occupied at the time of listing are essential to the conservation of the species.
> ...
> Specific information from the public on marbled murrelet and its habitat, and <u>which habitat or habitat components (i.e., physical and biological features) are essential to the conservation of this species</u>, and why.

71 Fed. Reg. 53838 (underlining added).  AFRC twice submitted comments addressing the identified issues.  Ex. B hereto; Ex. C hereto.

c.   On March 6, 2008, the Service published a notice in the Federal Register, 73 Fed. Reg. 12067, determining not to revise the 1996 critical habitat, asserting that "[t]his notice presents our finding pursuant to section 4(b)(6)(A)(i)(II) of the Act that a final regulation to implement the proposed revision to murrelet critical habitat should not be made at this time. ...Accordingly, the May 24, 1996, final rule designating critical habitat for the marbled murrelet remains in effect."  *Id.* at 12068.

Page 14 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

d.  On July 31, 2008 FWS opened a new APA rulemaking proposing to revise the 1996 critical habitat by deleting 254,070 currently designated acres.  73 Fed. Reg. 44678.  FWS again requested comment from the public including "[s]pecific information on the amount and distribution of marbled murrelet habitat." *Id*.  The proposal essentially implemented the acreage adjustments that had been proposed in 2006 but not adopted earlier in 2008.  FWS was explicit that "[t]he criteria used to identify critical habitat areas described in the May 24, 1996, Federal Register remain applicable to this proposed revision of critical habitat for the marbled murrelet." *Id*. at 44680.

e.  On October 5, 2011 FWS published a final rule revising critical habitat for the tri-state DPS by deleting 189,671 acres of land from the designation.  76 Fed. Reg. 61599.  The regulatory notice announced FWS was expanding its interpretation of designated critical habitat to vast additional areas that were not previously considered to fall within the designation.  *Id*. at  61604.

2.     **The 2006-08 rulemaking reopened the 1996 critical habitat rule.**

Audubon is correct that AFRC views the D.C. Circuit's "reopening doctrine" as a basis for challenging components of the 1996 critical habitat rule through the FWS 2008 decision to leave the 1996 designation in place.  Audubon is incorrect in arguing that the "reopening doctrine" does not apply to this case.  This is the very paradigm of a case where reopening has occurred.

a.     **D.C. Circuit law holds that reopening an earlier-made agency decision requires only two agency acts:  initiation of a formal APA rulemaking proceeding, and an invitation for public comment on a proposed rule that is broad enough to encompass the earlier-made decision.**

The reopening doctrine is, in the context of this case, not nearly as murky as Audubon

Page 15 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ● E-mail:  markrutzick@rutzick.com

15

suggests.[2]  The issue is determined with reference to the particular legal challenges a plaintiff wishes

to assert.  The D.C. Circuit reopening cases hold that the agency has reopened an issue decided in

a previous rulemaking if two factors are present: 1) initiation of a formal APA rulemaking proceeding

(as opposed to some preliminary or informal notice or petition) to amend, replace or retain  an

existing rule; and 2) an agency invitation for public comment broad enough to encompass the earlier-

made decision that the plaintiff is challenging.  Other factors may or may not be present from case

to case, but these are the only required elements of the reopening doctrine.

All the D.C. Circuit cases allowing reopening found these two factors present: *CTIA-Wireless
Ass'n v. F.C.C.*, 466 F.3d 105 (D.C. Cir. 2006); *Columbia Falls Aluminum Co. v. E.P.A.*, 139 F.3d
914 (D.C. Cir.1998);  *Edison Elec. Institute v. U.S. E.P.A.*, 996 F.2d 326, 332 (D.C. Cir. 1993);
*Public Citizen v. Nuclear Reg. Com'n*, 901 F.2d 147, 150 (D.C. Cir. 1990);  *Assoc. of Am. Railroads
v. ICC*, 846 F.2d 1465, 1473 (D.C.Cir.1988);  *State of Ohio v. U.S. E.P.A.*, 838 F.2d 1325, 1328
(D.C.Cir.1988); *Mont.*, 749 F.2d at 744.

In turn, all the cases rejecting reopening lacked either one or both of these two factors. *Am.
Road & Transp. Builders Ass'n v. E.P.A.*, 588 F.3d 1109 (D.C. Cir. 2009) (no broad comment
invitation); *Nat. Res. Def. Council v. E.P.A.*, 571 F.3d 1245 (D.C. Cir. 2009) (no broad comment
invitation); *Sierra Club v. E.P.A.*, 551 F.3d 1019 (D.C. Cir. 2008) (no broad comment invitation);

---

[2]On page 6 of the Opposition, Audubon offers a quote that purports to be from *Montana v. Clark*,
749 F.2d 740, 744 (D.C.Cir.1984) describing "four factors [that] are often discussed" relevant to the
reopening doctrine.  No such quote appears in the cited case.  Those four factors were indeed
mentioned in that case, but the Court nowhere suggested all four factors must be discussed, let alone
present, to trigger the reopening doctrine.

Page 16 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR
               ENTRY OF CONSENT DECREE**

*P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d at 1026–27 (no rulemaking); *Environmental Defense v. E.P.A.*, 467 F.3d 1329 (D.C. Cir. 2006) (no broad comment invitation); *General Motors Corp. v. E.P.A.*, 363 F.3d 442 (D.C. Cir. 2004) (no rulemaking); *Domestic Securities, Inc. v. S.E.C.*, 333 F.3d 239 (D.C. Cir. 2003) (no broad comment invitation); *National Petrochemical & Refiners Ass'n v. E.P.A.*, 287 F.3d 1130 (D.C. Cir. 2002) (no broad comment invitation); *Nat. Ass'n of Reversionary Property Owners*, 158 F.3d at 142 (no broad comment invitation); *United Transp. Union-Illinois Legislative Bd. v. Surface Transp. Bd.*, 132 F.3d 71 (D.C. Cir. 1998) (no broad comment invitation); *Kennecott Utah Copper Corp. v. U.S. Dept. of Interior*, 88 F.3d 1191 (D.C. Cir.1996) (no broad comment invitation); *Nat. Min. Ass'n v. U.S. Dept. of Interior*, 70 F.3d 1345, 1351 D.C. Cir. 1995) (no broad comment invitation); *Am. Iron & Steel Institute v. U.S. E.P.A.*, 886 F.2d 390 (D.C.Cir.1989) (no rulemaking).

On at least four occasions, the D.C. Circuit has expressed that the opportunity for meaningful comment on an earlier-decided issue is the touchstone of the reopening doctrine. "[W]hen the agency in question by some new promulgation creates the opportunity for renewed comment and objection ..., affected parties may seek judicial review, even when the agency decides not to amend the long-standing rule at issue." *General Motors Corp.*, 363 F.3d at 449-50 (citations and quotations omitted). "An explicit invitation to comment on a previously settled matter, even when not accompanied by a specific modification proposal, is usually sufficient to affect a reopening." *Nat. Ass'n of Reversionary Property Owners*, 158 F.3d at 142. "By soliciting comments on the existing ...regulations and advancing a possible alternative approach in the proposed ...rule, the [agency]

Page 17 -   **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

clearly provided the type of opportunity for renewed comment and objection that suffices to restart the statutory period for seeking review." *Edison Elec. Institute*, 996 F.2d at 332 (quotations omitted). "[T]he general principle [is] that if the agency has opened the issue up anew, even though not explicitly, its renewed adherence is substantively reviewable." *Assoc. of Am. Railroads*, 846 F.2d at 1473.

The D.C. Circuit has guidelines for identifying the required broad-comment invitation, all of which give the benefit of the doubt to reopening. "Ambiguity in [a rulemaking notice] may also tilt toward a finding that the issue has been reopened." *Nat. Ass'n of Reversionary Property Owners*, 158 F.3d at 142. "If in proposing a rule the agency uses language that can reasonably be read as an invitation to comment on portions the agency does not explicitly propose to change ... a renewed challenge to the underlying rule or policy will be allowed." *Public Citizen*, 901 F.2d at 150. "[T]he general principle [is] that if the agency has opened the issue up anew, even though not explicitly, its renewed adherence is substantively reviewable." *Assoc. of Am. Railroads*, 846 F.2d at 1473. [3]

b.      **The reopening doctrine is applicable to AFRC's claims in this case.**

This simple distillation of the reopening doctrine negates all of Audubon's arguments against reopening, and demonstrates that AFRC's Fourth and Sixth claims in this case were reopened by

---

[3] The D.C. Circuit has also held that an amendment to an existing rule reopens the statutory validity of the original rule that continues in amended form. "An agency can hardly be heard to say that at a time when it was considering whether to take a certain action, it would have steadfastly ignored a commenter's showing that the action was unlawful." *Public Citizen*, 901 F.2d at 152. Thus the 2011 critical habitat amendments reopened the statutory validity of the remaining critical habitat first designated in 1996, notwithstanding FWS' attempt to block such review by refusing to consider AFRC's comments challenging the legality of the designated critical habitat.

Page 18 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347  ●  E-mail: markrutzick@rutzick.com

18

actions of FWS from 2006 to 2011.

1.    Audubon incorrectly suggests that the reopening doctrine requires two additional mandatory elements: "an agency [must] publish[] a final rule that re-adopts the prior rule and include[] a response to comments explaining the agency's decision to continue to adhere to the old rule."  Opp. at 6-7.  The D.C. Circuit reopening decisions have not required the agency to expressly "re-adopt" the prior rule, and have not required the agency to respond to public comments on the issue under review.  While those factors have in some cases provided further evidence of reopening, neither is <u>required</u> for reopening.  *CTIA-Wireless Ass'n*, 466 F.3d at 111 (no mention of agency responses to comments); *Columbia Falls Aluminum Co.,* 139 F.3d at 920 (agency decision, made without notice or comment, to extend prior exemption period reopened legal basis of original exemption); *Edison Elec. Institute*, 996 F.2d at 330, 332 (no mention of agency responses to comments; "[agency] observes that it did not republish its ...regulations, nor did it propose specific language to replace or modify them. ... [S]uch measures are not required to restart the statutory review period"); *Public Citizen*, 901 F.2d at 1509 (no mention of agency responses to comments); *Assoc. of Am. Railroads*, 846 F.2d at 1473 (no mention of agency responses to comments; no characterization of format of final rule); *State of Ohio*, 838 F.2d at 1328 (agency "requested comments only on new or changed provisions" and responded to one comment on previously decided issue; new rule "retained" provision of previous rule). Of all the cases allowing reopening, only *State of Ohio* and *Mont.*, 749 F.2d 740, even mention agency responses to comments, and none of the cases involved a formal "re-adoption" of a prior rule.

Page 19 -    **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347  ●  E-mail: markrutzick@rutzick.com

19

2.  Thus, Audubon's comment that FWS failed to include a response to public comments in its 2008 decision concluding the rulemaking, Opp. at 7, 8, has no legal significance, and with good reason.  If it did, an agency could prevent judicial review of APA violations by committing an additional APA violation – failing to respond to public comments.  No such perverse rule exists.

3.  Audubon's claim that FWS "abandoned the process in mid-stream," Opp. at 5, or "simply stopped the administrative process," Opp. at 7, would have no legal significance even if it were true, since the format of the agency's final decision is not relevant to reopening. But in any event the record also clearly refutes those statements.  The 2003 Settlement Agreement, ¶2, Ex. A, required FWS to "conduct a rulemaking to consider potential revisions to Murrelet critical habitat."  FWS announced in 2006 that the Settlement Agreement obligated it "to <u>complete a rulemaking</u> for critical habitat for the marbled murrelet that considers any new  information."  71 Fed. Reg. 53839-40 (September 12, 2006).  In 2008, when FWS published its decision to keep the 1996 rule in place, FWS announced that "the publication of this Federal Register notice complete[s] the Service's obligations under the settlement agreement." 73 Fed. Reg. 12068.  The FWS decision in 2008 not to revise the 1996 critical habitat was the completion of the rulemaking, not its abandonment.[4]

4.  Likewise, Audubon's claim that in 2006 "FWS began a process to completely rewrite the 1996 murrelet critical habitat rule," Opp. at 5, is legally irrelevant under D.C. Circuit law, and

---

[4]To be clear, AFRC neither condones nor endorses FWS' decision in 2008 to keep the 1996 critical habitat in place.  AFRC views that act as a less-than-good-faith implementation of the 2003 settlement agreement.  AFRC's view of the ethics of the decision has no bearing on the legal interpretation of what FWS did.

Page 20 -    **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

factually inaccurate. AFRC might have wished that claim was true, but the FWS Federal Register notices refute the contention.  At the conclusion of the rulemaking in 2008, FWS acknowledged that the 2006 proposed rule "included <u>minor adjustments to the original designation</u>." 73 Fed. Reg. 12068. (underlining added).  "The critical habitat units proposed in 1996 cover the same general area as the 1996 designation," 71 Fed. Reg. 53847. FWS directed the public to read the 1996 rule "[f]or more information on the marbled murrelet." 71 Fed. Reg. 53847.  The 1996 rule designated 3,887,800 acres as critical habitat in the three-state region, 61 Fed. Reg. 26269, while the 2006 rule proposed to designate 3,590,642 acres, 71 Fed. Reg. 53847, a seven percent reduction.

There was never a "complete re-write" of the 1996 rule.  The 2006 proposed "primary constituent elements" for marbled murrelet habitat, the key component of a critical habitat designation, were almost entirely copied from the 1996 rule, with a few wording changes, only one of which was significant. *Compare* 61 Fed. Reg. 26264 *with* 71 Fed. Reg. 53843; *see* AFRC Complaint,¶52.  The only alterations to designated areas from the 1996 rule were based on new site-specific information.  71 Fed. Reg. 53847.  There were no changes in methodology or biological criteria.  From the scientific standpoint, the 2006 proposed rule <u>is</u> the 1996 rule, with very minor updates.  The primary difference in the two documents was that the 2006 rule proposed to exclude most of the critical habitat areas on non-biological grounds under 16 U.S.C. §1533(b)(2), a step that occurs after the critical habitat is identified on biological grounds.  Far from a "complete[] re-write [of] the 1996 murrelet critical habitat rule,"as Audubon claims, the biological content of the 2006 rule was almost identical to the 1996 rule.

Page 21 -      **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

In this case, the 2006 proposed rule reopened every issue in the 1996 rule that AFRC is challenging in this case.  The rule 1) proposed to amend the 1996 rule but proposed to continue using the habitat identification methodology that AFRC is challenging as legally defective; and 2) invited public comment on those specific issues.  Since FWS reopened those issues in 2006, AFRC's claims concerning the 1996 rule are timely under 28 U.S.C. §2401.  For similar reasons, the rulemaking that began in 2008 and culminated in the 2011 critical habitat amendment likewise reopened the issues AFRC raises in this case.

II.     **THE COURT CAN VACATE THE 1996, 2008 AND 2011 CRITICAL HABITAT RULES AS PART OF THE CONSENT DECREE WITHOUT REACHING THE MERITS OF AFRC'S CLAIMS AND WITHOUT REQUIRING FWS TO CONDUCT RULEMAKING**

A.     <u>**No requirement to reach merits**</u>.

Next, Audubon argues that the Court cannot approve the Consent Decree vacating the 1996, 2008 and 2011 critical habitat decisions without first determining that those decisions are unlawful for the reasons alleged in AFRC's complaint.  Opp. at 10-14.  Since the point of a settlement is to avoid having to litigate a case to a conclusion, Audubon is effectively arguing that a case challenging an APA rule cannot be settled in a way that is meaningful to the plaintiff, no matter how strong the plaintiff's case may be.  American law strongly disagrees with that proposition.

The D.C. Circuit has a "long-standing rule [] that a district court has power to enter a consent decree without first determining that a statutory violation has occurred."  *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125 (D.C. Cir. 1983).   As this Court had occasion to

Page 22 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

write in recent days:

> The Court's function is not to "inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy," but "only [to] determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties."

*U.S. v. Wells Fargo Bank, NA*,2012 WL 4130513 *1-2 (D.D.C. September 20, 2012) (citations, quotations and brackets omitted), *citing Citizens for a Better Env't*, 718 F.2d 1117 at 1125; *Kasper v. Board of Election Com'rs of the City of Chicago*, 814 F.2d 332, 338 (7th Cir. 1987) ("If a court accepts a decree, it need not decide the merits; the parties are free to agree on relief more extensive than federal law requires."); *Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 551 (6th Cir. 1982) ("The court should not determine the merits of the controversy or the precise facts underlying the legal positions of the litigants presenting the consent decree."); *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980); *U.S. v. City of Jackson, Miss.*, 519 F.2d 1147, 1151 (5th Cir. 1975).  Nor is a settling defendant required to admit wrongdoing or liability, as Audubon asks.  *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995).

**B.**     **No exception for notice-and-comment rules.**

The well-settled rule against merits determinations on consent decrees has no exception for consent decrees that vacate a rule adopted through APA rulemaking procedures, as Audubon contends.  Opp. at 13-14.  Audubon acknowledges that two cases in this court have approved a consent decree vacating a critical habitat rule without reaching the merits of the case or requiring a new round of notice-and-comment rulemaking.  *Home Builders Ass'ns of N. California v. Norton*,

Page 23 -     **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

293 F. Supp. 2d 1, 4 (D.D.C. 2002); *National Association of Home Builders v. Evans*, No. 00-cv-02799, 2002 WL 1205743 (D.D.C.2002).  Audubon argues that "more recent D.C. district court decisions limit the applicability of the *Home Builders* precedents," Opp. at 13, but none of the three cited recent cases supports that claim.  To the contrary, *Carpenters Indus. Council v. Salazar*, 734 F.Supp.2d 126, 137 (D.D.C. 2010), states that "the Court recognizes its authority to vacate a critical habitat designation without a determination of the merits through the entry of a proposed consent decree ...."  In *Nat'l Parks Conservation Ass'n v. Salazar,* 660 F. Supp. 2d 3, 4 (D.D.C. 2009), the Court expressly distinguished one of the *Home Builders* cases precisely on the ground it involved a consent decree, and did not address the other *Home Builders* case at all.  This Court's recent decision in *Douglas Timber Operators v. Salazar,* 774 F. Supp. 2d 245 (D.D.C. 2011) did not involve a consent decree, and did not comment on other cases involving consent decrees. The more telling point in the Opposition is that Audubon <u>failed to cite</u> any authority rejecting a consent decree because it vacated an APA notice-and-comment rule without reaching the merits of the case.  The court has no duty to reach the merits of the case basis before finding, as it should, that "the settlement is fair, adequate, reasonable and appropriate under the particular facts."

### III.   THE "PUBLIC INTEREST" IS NOT COEXTENSIVE WITH UNBOUNDED ENVIRONMENTAL REGULATION

Audubon argues at length (and without evidentiary support) that vacating the murrelet critical habitat for several years would be contrary to the "public interest."  Opp. at 15, 16, 28.  The (unspoken) premise of the argument is that more environmental regulation is always in the public

Page 24 -    **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE**

interest.  With respect, the law does not support such a narrow view of public interest.  Even in the

ESA, Congress found the public interest lay in avoiding unnecessary economic harm:  "[W]e think

it readily apparent that another objective [of the ESA] (if not indeed the primary one) is to avoid

needless economic dislocation produced by agency officials zealously but unintelligently pursuing

their environmental objectives." *Bennett v. Spear*, 520 U.S. 154, 176-77 (1997).  AFRC respectfully

asks the Court to consider jobs, communities and county services as part of the "public interest" in

determining whether to approve the Consent Decree.

**Conclusion**

The joint motion for entry of the Consent Decree should be granted.

Dated this 24th day of September, 2012.

By:   ___/s/  Mark C. Rutzick_____

Mark C. Rutzick, D.C. Bar No. 979547
markrutzick@rutzick.com
Mark C. Rutzick, Inc.
12402 Myra Virginia Ct.
Oak Hill, VA 20171
Telephone/Facsimile: (703) 870-7347
Attorney for Plaintiffs

Page 25 -    **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR
              ENTRY OF CONSENT DECREE**