UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, CARPENTERS INDUSTRIAL COUNCIL, and DOUGLAS COUNTY, OREGON,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL M. ASHE, Director, U.S. Fish and Wildlife Service, and SALLY JEWELL, Secretary of the Interior,<br><br>Defendants,<br><br>and<br><br>AUDUBON SOCIETY OF PORTLAND, SEATTLE AUDUBON SOCIETY, CENTER FOR BIOLOGICAL DIVERSITY, OREGON WILD, CONSERVATION NORTHWEST, ENVIRONMENTAL PROTECTION INFORMATION CENTER, and SIERRA CLUB,<br><br>Defendant-Intervenors. | Civil Action No. 12-111 (JDB) |

## MEMORANDUM OPINION

Plaintiffs American Forest Resource Council, Carpenters Industrial Council, and Douglas County, Oregon (collectively, "AFRC") brought this action against defendants Daniel M. Ashe, Director of the U.S. Fish and Wildlife Service, and Sally Jewell, Secretary of the Interior (collectively, "FWS").[1] Before the Court is AFRC's unopposed motion for an order under

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Sally Jewell, as successor to former Secretary of the Interior Ken Salazar, is automatically substituted as a defendant.

Federal Rule of Civil Procedure 54(b) entering final judgment on three of AFRC's claims. Pls.' Mot. for Entry of Final Judgment ("Pls.' Mot.") [ECF No. 74]. For the reasons stated below, the Court "expressly determines that there is no just reason for delay," Fed. R. Civ. P. 54(b), and will grant AFRC's motion.

## BACKGROUND

The case concerns the marbled murrelet, a small seabird native to the Pacific Northwest. The marbled murrelet has the unfortunate luck of making its home in old-growth forests that are highly desirable to the logging and timber industries, so it is a frequent subject of agency rulemaking (and thus, environmental litigation). The complex factual and procedural background of this case is fully set forth in the Court's March 30, 2013 and September 5, 2013 memorandum opinions. See Am. Forest Res. Council v. Ashe, No. 12-111 (D.D.C. Sept. 5, 2013) ("Sept. 2013 Mem. Op.") [ECF No. 68]; Am. Forest Res. Council v. Ashe, 946 F. Supp. 2d 1 (D.D.C. 2013) ("Mar. 2013 Mem. Op.") [ECF No. 50]. In those two decisions, the Court granted summary judgment in favor of FWS and intervenors on all three of AFRC's claims regarding FWS's decision not to "delist" the Washington, Oregon, and California ("tri-state") population of the marbled murrelet (the "delisting claims"). See Sept. 2013 Mem. Op. at 14-15 (granting FWS's cross-motion for summary judgment on AFRC's third delisting claim); Mar. 2013 Mem. Op. at 18, 29 (granting FWS's cross-motion for summary judgment on AFRC's first and second delisting claims). The Court also granted FWS's motion for voluntary remand without vacatur of FWS's 1996 rulemaking with respect to its critical habitat designation for the marbled murrelet. See Sept. 2013 Mem. Op. at 27. That rulemaking, as FWS ultimately conceded, suffered from several legal defects. See generally Defs.' Mot. for Voluntary Remand Without Vacatur ("Defs.' Mot. for Remand") [ECF No. 54]. AFRC had challenged those defects

in its four remaining claims (the "habitat claims"). FWS's current deadline to submit a new final critical habitat designation for the marbled murrelet to the Federal Register is September 30, 2016, just over three years from the date of the Court's most recent opinion. See Sept. 5, 2013 Order [ECF No. 69].

After the September 2013 opinion—which disposed of all of AFRC's remaining claims—AFRC filed a notice of appeal to the D.C. Circuit, challenging the Court's grant of summary judgment to FWS on AFRC's delisting claims. Pls.' Notice of Appeal [ECF No. 71]. Shortly thereafter, the D.C. Circuit ordered AFRC to "show cause, within 30 days . . . , why this appeal should not be dismissed for lack of a final order." Am. Forest Res. Council v. Ashe, No. 13-5302 (D.C. Cir. Jan. 9, 2014). The next day, AFRC filed this motion, noting (correctly) that

> [t]he premise of the Order To Show Cause appears to be that because this Court remanded AFRC's Fourth through Seventh Claims (challenging marbled murrelet critical habitat) to FWS, at its request, and because a district court order remanding an agency decision back to the agency for further action is generally not a final appealable order, the Court's orders disposing of AFRC's delisting claims are not final appealable orders in the absence of an order from this Court directing entry of judgment on the First, Second, and Third Claims under Fed. R. Civ. P. 54(b).

Pls.' Mot. at 2. Hence, AFRC now moves for an order entering final judgment on its delisting claims under Rule 54(b). Neither FWS nor intervenors oppose AFRC's motion.

## LEGAL STANDARD

Rule 54(b) provides that when more than one claim is presented in an action, a district court "may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); see also Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 4-5 (1980); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 435-36 (1956). "Rule 54(b) mediates between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice." Taylor v.

FDIC, 132 F.3d 753, 760 (D.C. Cir. 1997). The role "of the district court under the Rule is to act as a 'dispatcher,'" exercising "sound judicial discretion" in order "to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." Curtiss-Wright, 446 U.S. at 8 (quoting Sears, 351 U.S. at 435).

The Supreme Court has "outlined the steps to be followed in making determinations under Rule 54(b)." Id. at 7. "A district court must first determine that it is dealing with a 'final judgment,'" id., that is, "an ultimate disposition of an individual claim entered in the course of a multiple claims action," Sears, 351 U.S. at 436. Next, the district court asks "whether there is any just reason for delay." Curtiss-Wright, 446 U.S. at 8. The Supreme Court has cautioned that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." Id. In exercising this discretion, "a district court must take into account judicial administrative interests as well as the equities involved." Id.; see also Sears, 351 U.S. at 438 (noting "the historic federal policy against piecemeal appeals"). One important factor is whether granting the motion makes it likely that an "appellate court would have to decide the same issues more than once." Curtiss-Wright, 446 U.S. at 8.

The D.C. Circuit has been clear that the courts in this district should "supply a statement of reasons" in ruling on a motion under Rule 54(b). Taylor, 132 F.3d at 761; Bldg. Indus. Ass'n of Superior Cal. v. Babbitt, 161 F.3d 740, 745 (D.C. Cir. 1998) ("As we cannot on the record before us determine that the district court [properly exercised its discretion], we conclude that the Rule 54(b) certification before us is not proper."); see also Baystate Med. Ctr. v. Leavitt, 587 F. Supp. 2d 44, 46 (D.D.C. 2008) ("A district court must supply a meaningful explanation for not

4

allowing the normal delay inherent in litigation of multiple claims.") (internal quotation marks omitted).

## DISCUSSION

AFRC seeks an entry of final judgment on all three of its delisting claims, as to which the Court has granted summary judgment in favor of FWS. The unifying premise of the delisting claims is that FWS's denial of AFRC's petition to delist the tri-state population of the marbled murrelet was arbitrary and capricious. Specifically, AFRC challenges FWS's decision finding delisting "not warranted" on three grounds: (1) FWS failed to make the requisite determination under the Endangered Species Act that marbled murrelets "interbreed when mature," (2) FWS's determination that the tri-state population of marbled murrelets is "discrete" was arbitrary and capricious, and (3) FWS's determination that the tri-state population of marbled murrelets is "significant" was arbitrary and capricious. Compl. [ECF No. 1] ¶¶ 34, 39, 46.

AFRC's four remaining claims, the habitat claims, have all been remanded to the agency for further consideration. See Sept. 5, 2013 Order. This remand was at FWS's request, which admitted that its 1996 critical habitat designation rested on shaky legal grounds. See Def.'s Mot. for Remand. AFRC brought four habitat claims: (1) FWS improperly designated as critical habitat three million acres that were "not occupied" by the marbled murrelet; (2) FWS failed to use the best scientific and commercial information available in designating the critical habitat; (3) FWS unlawfully designated a critical habitat by including areas that do not "contain physical or biological features essential to the conservation" of the marbled murrelet; and (4) FWS failed to provide an opportunity for notice-and-comment before expanding the marbled murrelet's critical habitat to areas that did not include the requisite "physical and biological features." Compl. ¶¶ 50, 55, 60, 67.

AFRC moves for an order under Rule 54(b), with hopes of immediately appealing this Court's adverse rulings on its delisting claims, rather than waiting for the FWS to finish the new rulemaking regarding the marbled murrelet's critical habitat. Because the entries of summary judgment on the delisting claims were final judgments on those claims, and because there is no just reason for delay of AFRC's appeal, the Court will grant AFRC's motion.

I. **Finality**

The first step in the Rule 54(b) analysis is to determine whether granting summary judgment to FWS on AFRC's delisting claims resulted in a "final" judgment on those claims. See Curtiss-Wright, 446 U.S. at 7. A judgment is "final" for purposes of Rule 54(b) if it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." Sears, 351 U.S. at 436. As AFRC explains in its motion, there is "no question that the Court's orders of March 30, 2013 and September 5, 2013 granting summary judgment on AFRC's delisting claims were intended to be final. All legal issues were resolved. Nothing remains to be decided on any of the claims." Pls.' Mot. at 3. Put another way, unless and until those claims are appealed, no further court action will take place. Were those the only claims in this action, the entry of summary judgment in favor of FWS on all three claims would qualify as an immediately appealable "final judgment" under 28 U.S.C. § 1291. For these reasons, the Court concludes that the entry of summary judgment in favor of FWS on AFRC's delisting claims was "final" for purposes of Rule 54(b).

II. **No Just Reason For Delay**

Next, the Court considers whether there is "just reason for delay" of an appeal of AFRC's delisting claims pending the outcome of FWS's forthcoming rulemaking about the critical habitat designation of the marbled murrelet. Importantly, the habitat claims that have been remanded to

the agency are distinct from "the claims on which certification is sought," Curtiss-Wright, 446 U.S. at 9, that is, the delisting claims. To be sure, all of AFRC's claims involve the marbled murrelet and the Endangered Species Act—that is why they were brought in the same action. See Baystate, 587 F. Supp. 2d at 47 n.1 (granting Rule 54(b) motion because claims were "factually and legally distinct," but noting that "[n]ot surprisingly, there is some relationship" between the various claims). But beyond that high-level overlap, the actual resolution of the delisting claims bears minimal factual or legal similarity to the resolution of the habitat claims. The delisting claims turn on the agency's factual findings on whether the tri-state population of marbled murrelets is "discrete" and "significant," and whether it "interbreeds when mature." Compl. ¶¶ 34, 39, 46. On the other hand, the habitat claims turn on the physical characteristics of the relevant geographical area—that is, whether the entire designated area is "occupied" by the marbled murrelet, and other "physical or biological features" of the selected region—as well as specific flaws in the rulemaking process, like FWS's failure to rely on the best scientific evidence and to provide a full opportunity for notice and comment. Id. ¶¶ 50, 55, 60, 67. Other than the marbled murrelet, these two sets of claims have little in common.

In addition, while a court-ordered remand to an executive agency is not an immediately appealable final judgment, North Carolina Fisheries Ass'n, Inc. v. Gutierrez, 550 F.3d 16, 19 (D.C. Cir. 2008), here AFRC's habitat claims will likely never return to this Court—at least, not in any recognizable form. AFRC challenged highly specific flaws—factual and legal—in the process FWS used to adopt its 1996 critical habitat designation. Those flaws should be resolved by FWS's new rulemaking and, therefore, some or all of AFRC's habitat claims are likely to be on different legal footing—or mooted entirely—after FWS issues a new critical habitat

designation. AFRC should not have to wait to appeal its delisting claims, given that those may be the only viable claims that will remain after FWS completes the new habitat rulemaking.

When presented with a Rule 54(b) motion, a district court must also "take into account . . . the equities involved." Curtiss-Wright, 446 U.S. at 8. Here, the equities weigh strongly in favor of granting AFRC's motion. Most importantly, AFRC would be greatly prejudiced if it were forced to wait for FWS to finish (another) rulemaking about the marbled murrelet's critical habitat designation before being allowed to appeal its delisting claims—claims that are largely unrelated to the critical habitat issue. And during this delay—which will last a minimum of three years—AFRC will be forced to "continue to operate their businesses against the prejudicial backdrop of the murrelet . . . listing," which, in AFRC's view, "continues to threaten severe impacts on the federal timber sales that most of AFRC's members rely upon to conduct their business operations." Pls.' Mot. at 4.

FWS could also be harmed by delaying an appeal of the delisting claims. If the D.C. Circuit reverses this Court's ruling on the delisting claims, any work that FWS has done on the habitat claims will likely be wasted, either in whole or in part, because FWS designates critical habitats only for listed species. See 16 U.S.C. § 1533(a)(3). And if the D.C. Circuit affirms, FWS can proceed with the habitat rulemaking without the cloud of a possible reversal on the delisting claims. For these reasons, all parties benefit from a prompt appellate resolution of the delisting claims, so it is not surprising that neither FWS nor the intervenors oppose AFRC's motion.

Although consent from all parties weighs in favor of granting a Rule 54(b) motion, that factor is not dispositive: the Court "must take into account judicial administrative interests," Curtiss-Wright, 446 U.S. at 8—interests which are not well-represented by any of the parties

here. In this case, however, "the judicial administrative interest in avoiding piecemeal appeals would not be compromised by the entry of a final judgment," Baystate, 587 F. Supp. 2d at 46, on the delisting claims. For several reasons, allowing an immediate appeal of those claims would not make it likely that the D.C. Circuit "would have to decide the same issues more than once." Curtiss-Wright, 446 U.S. at 8. As already discussed, the factual and legal overlap between the delisting claims and the habitat claims is minimal, and the habitat claims may never return to federal court—at least not in their current form. FWS's new rulemaking may address all of the timber industry's concerns, or may be unquestionably compliant with the APA's procedural requirements. At the very least, it is unlikely that FWS will repeat its previous mistakes—for example, by failing to make certain statutorily required factual findings, or failing to provide an opportunity for comment on certain expansions of the critical habitat designations—let alone repeat them in the same manner as the first time around. Hence, AFRC's existing habitat claims will likely be mooted by the pending habitat rulemaking, minimizing the possibility that granting AFRC's motion will lead to duplicative appeals.[2] For all these reasons, the Court "expressly

---

[2] In 1998, the D.C. Circuit reversed another court in this district for granting a Rule 54(b) motion based on very similar facts. See Bldg. Indus. Ass'n of Superior Cal. v. Babbitt, 161 F.3d 740 (D.C. Cir. 1998) (holding that district court erred by entering final judgment under Rule 54(b) on "fairy shrimp" delisting claims under the Endangered Species Act, where habitat claims had been remanded to the agency for further consideration). That opinion included a brief dictum suggesting that granting the Rule 54(b) motion in that case could have led to two "fairy shrimp" appeals presenting the same issues. Id. at 745 ("It appears to us that these two decisions . . . arise from a nexus of fact and law so intertwined that if we decide the one now, we may nonetheless face many of the same questions in determining the other later."). But that sentence does not dissuade the Court from granting the Rule 54(b) motion here. Whatever the case may have been for the fairy shrimp, as explained at length, it is highly unlikely here that the D.C. Circuit "would have to decide the same issues more than once," Curtiss-Wright, 446 U.S. at 8, with respect to the marbled murrelet. More fundamentally, despite the remarkable factual similarities between the underlying claims in this case and in Babbitt, the reasoning adopted by the D.C. Circuit in that case does not apply here. The D.C Circuit did not reverse based on the district court's actual analysis of the propriety of issuing a Rule 54(b) order, but instead faulted the lack of a complete on-the-record explanation of how the district court exercised its discretion. See id. at 744 ("As the district court did not supply its reasoning on this point, and as the record appears silent on the point, we are unable to adequately perform the review prescribed under Sears and Curtiss-Wright."); id. at 745 ("As we cannot on the record before us determine that the district court [properly exercised its discretion], we conclude that the Rule 54(b) certification before us is not proper."). Here, such an explanation has been provided.

9

determines that there is no just reason for delay," Fed. R. Civ. P. 54(b), and it will grant AFRC's motion for entry of final judgment on its delisting claims.

## **CONCLUSION**

For the foregoing reasons, AFRC's unopposed motion for an order under Rule 54(b) will be granted. A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: January 22, 2014